**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Constante P. Barot
Dolores A. BAROT
_____
Plaintiff

vs.                                        Case Number **17 - 0007974**

Aloban Management Corp. CAMC)
_____
Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Dolores A. BAROT
Name of Plaintiff's Attorney

6707, 14th St, NW Apt A
Address
Washington, DC 20012

202 723 0402
Telephone
如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주세요    ለማንኛውም ትርጉም ለማግኘት (202) 879-4828    ይደውሉ

By _____
Deputy Clerk
Date _____

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



**EXHIBIT**
B

Super. Ct. Civ R. 4



## TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
### DIVISIÓN CIVIL
#### Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                                    Demandante

contra

                                                        Número de Caso: _____

_____
                                    Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                        SECRETARIO DEL TRIBUNAL

Nombre del abogado del Demandante _____

                                        Por _____
Dirección _____                        Subsecretario

                                        Fecha _____
Teléfono _____

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bản dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828로 전화주십시오         የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev June 2017]                                        Super. Ct. Civ. R 4

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Constante P. Barot
Dolores A. Barot

vs

Aldon Management Corp. (AMC) ☐ One of the defendants is being sued
in their official capacity.

Case Number: **17 - 0007974**

Date: _____

| Name: *(Please Print)* | Relationship to Lawsuit |
|---|---|
| Dolores A. Barot | ☐ Attorney for Plaintiff |
| Firm Name: | ☒ Self (Pro Se) |
| Telephone No.:        Six digit Unified Bar No.:<br>202-723-0402 | ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury      ☐ 6 Person Jury      ☐ 12 Person Jury
Demand: $ 20,000.+oo          Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.:_____    Judge:_____    Calendar #:_____

Case No.:_____    Judge:_____    Calendar#:_____

---

**NATURE OF SUIT:**      *(Check One Box Only)*

**A. CONTRACTS**                    **COLLECTION CASES**

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☒ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
Under $25,000 Consent Denied

**B. PROPERTY TORTS**

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

**C. PERSONAL TORTS**

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile,
Not Malpractice)

☐ 17 Personal Injury- (Not Automobile,
Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE          IF USED

# Information Sheet, Continued

## C. OTHERS

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
    (DC Code § 11-941)
- ☐ 10  Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
    (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
    Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

## II.

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
    Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
    Judgment [ D.C. Code §
    2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
    42-3301, et seq.)

- ☐ 21 Petition for Subpoena
    [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
    (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

## D.  REAL PROPERTY

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

Dec.  01 , 2017
_____
Date

CV-496/ June 2015



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

CONSTANTE P. BAROT et al
    Vs.                             C.A. No.     2017 CA 007974 B
ALDON MANAGEMENT

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                            Chief Judge Robert E. Morin

Case Assigned to: Judge WILLIAM M JACKSON
Date:  December 1, 2017
Initial Conference: 9:30 am, Friday, March 09, 2018
Location:  Courtroom 219
               500 Indiana Avenue N.W.
               WASHINGTON, DC 20001

                                                           CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief    Judge    Robert    E.    Morin



**US SUPERIOR COURT**
**Washington, DC**

Constante P. Barot and Dolores A. Barot
6707, 14th St., NW Apt. A
Washington, DC 20012
Telephone No. 202 7230402
          Plaintiffs,

Versus                                    Case No.: **17-0007974**
                                          Department No.: _____
Aldon Management
8180 Wisconsin Avenue
Bethesda, MD 20814
          Defendant

### COMPLAINT

1.   Plaintiffs Spouses Constante P. Barot, and Dolores A Barot, residents of Washington, DC

and hereby sue Defendant, Aldon Management Corp. (AMC) located in Bethesda, MD for

violations of :

    a) Title VII of the Civil Rights Act of 1964 as amended,
    b) the Age Discrimination in Employment Act;
    c) District of Columbia Tenant Bill of Rights No. 9 (Quiet Enjoyment and Retaliation – DC
    Code 42-3505.02);
    d) The Federal Fair Housing Act
    e) The Fair Housing Law in the District
    f) DC Tenant Bill of Rights No. 6 (14 DCMR 106, 301 & 400-999) Also known as the
    *"warranty of habitability"*.
    g) DC Tenant Bill of Rights No. 3 (Disclosure of Information – DC Official Code 42-3505.22
    & .13d)

    h) DC Tenant Bill of Rights No. 10 (Discrimination – DC Official Code 2-1401.01 et seq);

### JURISDICTION

2.   This Honorable Court has subject matter jurisdiction over subject matter of this action

pursuant to 2-1403.16(a) . Venue is appropriate because Plaintiff Constante Barot works for Defendant

Aldon Managment Corp. (AMC) at AMC's apartment buildings located here in the District of

Columbia.

## I. PARTIES

3.   Plaintiffs, husband and wife, Constante P. Barot, 67 years of age, and Dolores A. Barot, 70 years of age; Filipinos and permanent residents of the United States of America. Constante Barot is also the Employee/Tenant in this case while Dolores Barot is a Tenant. At the time of the Defendant's wrong, Plaintiffs resided at 6707, 14th Street, NW Apt. A, Washington, DC 20012 and still reside there now.

4.   Defendant, Aldon Management, Corporation (AMC), Employer /Landlord, is a real state company that provides living apartment homes in Washington, DC and Maryland and is located at 8180 Wisconsin Avenue, Bethesda, MD 20814

5.   Plaintiff Constante Barot was employed by Aldon Management Corp. (AMC) on March 17, 2003 as Custodian and is still with AMC as Maintenance Helper up to the present

## TERMS AND CONDITIONS OF EMPLOYMENT

6.   On March 17, 2003, Plaintiff Constante Barot was hired as Custodian by the AMC for its Aspen Group. Plaintiff was provided with Employee Housing as Tenant. The Defendant, Employer/Landlord and Plaintiff, Employee/Tenant entered into a certain Lease Agreement wherein Plaintiff, (Employee/Tenant) has to live on the property at 6707, 14th St., NW, (Aspen Group)., Washington, DC 20012 as a condition of employment.

## TERMS AND CONDITIONS OF APARTMENT LEASE AGREEMENT
### at 6707, 14th St. NW, Apt. A, Washington, DC 20012

7.   (Occupancy) – Tenant covenants that they shall use and occupy the apartment only as a residential dwelling and private residence and for no other purpose whatsoever, by the following named individuals and no others: **Constante Barot and Dolores Barot and Sofia Barot and Amon Holmes.**

2

## II. FACTS

8.    In September, 2001, Plaintiffs  Constante Barot and Dolores Barot and daughter Sofia Barot rented  a two bedroom apartment at  (Doreen) 5910 , 14th St. NW Apt. #303, Washington, DC for **$715.00/mo.** The Building was  managed/owned by Aldon Management (Exhibit 1)

9.    On March 17, 2003, Plaintiff  Constante Barot was hired by Aldon  Management Corp. (AMC) as Custodian.  As a condition of employment, Aldon Management provided Employee Housing to the Plaintiff. AMC, the  Employer  and Employee (Constante Barot) entered into a Lease Agreement, thus  Defendant AMC became  Employer/Landlord and Plaintiff, Employee/Tenant (Exhibit 2) . At first, it was agreed  that, Plaintiff  will have a free housing accommodation and Plaintiffs  have to reside/live in the property/premises where  Plaintiff Constante Barot will work so that  Plaintiff Constante  Barot can quickly respond to emergencies and on-call needs from tenants. [ Later on, Plaintiffs  were charged 25% rent, then raised to 50% rent then back to 25%]

10. On July 26, 2003, Plaintiffs  Constante Barot and Dolores Barot and daughter Sofia Barot transferred to 6707, 14th Street, NW Apt. A Washington, DC 20012  a much smaller unit with a higher monthly rent of  $855.00/mo. (Exhibit 3)

11. From 2003  to 2008, the occupants in Apt. A were Plaintiffs Constante  Barot

and Dolores Barot and their daughter, Sofia Barot.

12. In 2009, Amon Holmes (Sofia's Husband) thru proper application procedure and meeting the same criteria as other prospective tenants, was  approved  and included as additional occupant. Plaintiffs' rent  then was $895.00/mo. (Exhibit 4) . In 2011, Xander Kane Holmes was born and added.

### Defendant (AMC) Violated DC Tenant Bill of Rights No. 9. DC Official Code 42-3505.02

13. On April 25, 2017,  the Manager, Ms. Daria Simpson and the Maintenance Staff entered Plaintiffs' apartment for the Spring 2017 Unit Inspection and Preventive Maintenance Exhibit 5

Plaintiff Dolores Barot saw that  Ms. Simpson (the Manager), instead of inspecting the unit, took

pictures of the whole unit, including Plaintiffs' personal belongings. Plaintiff  Dolores Barot tried to

stop the Manager but she continued which  act - Plaintiffs considered  as invasion of  their  privacy. DC

Tenant Bill of Rights No. 9 (D.C. Official Code 42-3505.02)

**14.** On April 25, 2017,  Plaintiff Dolores  Barot personally complained regarding the picture

taking in their  apartment by the Manager because they felt that their privacy have been invaded.

(Exhibit 6)

**15.** On  May 3, 2017  Ms. Maria  Rico (AMC's Vice President) and Ms. Daria  Simpson  (The

Manager) reinspected their unit. Plaintiff  Dolores  Barot overheard from Ms. Maria Rico's own mouth

that,  Apt. A (the one they are living/renting)  as per AMC's Record is only a one bedroom apartment;

and instructed  Ms. Simpson to prepare a new Lease Contract.  (Exhibit 7)

## Defendant (AMC) Violated The Federal Fair Housing Act

**16.** On May 8, 2017 Plaintiffs were  invited to the Aldon's Rental  Office to sign a new Lease

Contract. The new lease contract EXCLUDED Sofia and Amon Holmes and  listed  only two (2)

occupants name,  Plaintiffs Constante Barot and .Dolores Barot as the tenants/occupants.

**17.** Plaintiffs  showed   to Ms. Rosea  Smith (the officer of the day) the Aldon's Occupancy

Standard Sheet (Exhibit 8)  and insisted that their  unit has two bedrooms, thus four occupants is still

within the occupancy standards . When Ms.  Smith verified from their computer/record  the

classification of the Plaintiffs' apartment,  she  confirmed that Plaintiffs unit  is  classified in   AMC's

record  as only one (1) bedroom Apartment.

**18.** The new Lease Contract  created unreasonable restrictions on the number of people  from

four (4) adults and one (1) child to only two (2) adults that may live in Plaintiffs' rental unit so it would

4

show that their Unit is only one bedroom based on the number of occupants, which is illegal and

unethical . Such act is **housing discrimination that the Federal Fair Housing Act prohibits.**

(Exhibit 9)

19. Plaintiffs refused to sign the new lease contract and requested for copy of the new  contract

for their review.  Ms. Rosea  Smith   said that she was just requested by Management to

have the Plaintiffs sign the new contract and  Plaintiffs  can only have copy of the new lease contract IF

THEY SIGN IT, which statement,  **can be construed as harassment.**

20. Ms. Maria  Rico (AMC's Vice President)  thru AMC's Agent ( Aspen Rental Office) wants

Plaintiffs to sign new lease contract so that AMC  can  get away from their wrong doings/illegal acts.

## Defendant (AMC) Violated The Fair Housing Law in the District

21. Only on May 8, 2017, Plaintiffs   then discovered that AMC has been defrauding  them for

so many years [ie since 2003] . AMC have  Plaintiffs occupy/rent an apartment that is dangerous and

fire hazard . The 2nd Bedroom  was illegally constructed  from part of the Laundry Room. The 2nd

bedroom's  only window measured 4 ft and 7 inches high.

22. AMC provided  Plaintiffs  a  DIFFERENT APARTMENT UNIT than  Plaintiff's

American counterpart which is  against the Fair Housing Law in the  District. (Exhibit 10) This is the

most unfair/discriminatory treatment that an employer/landlord can do to his employee/tenant.

23. On May 9, 2017, Plaintiff Dolores  Barot  faxed  Ms. Daria  Simpson,  Manager, cc Ms

Rico explaining why Plaintiffs did not sign the new lease contract. Also informed that Plaintiffs  had

**confirmed**   that as per Aldon's record  what they were renting is only one bedroom apartment

reconfigured into  two (2)  Bedrooms and therefore, is an illegal-in-law unit/apartment. (Exhibit 11)

5

## Defendant  AMC Violated DC Tenant Bill of Rights  No. 9
## DC Code 42-3505.2

24. On May 10, 2017  Plaintiffs received Letter dated May 5, 2017  from Aldon's Lawyer,

Michele C. Meiners  of The Meiners Law Firm, PLLC  that reads:  "Notice to Correct or Vacate" which

can be considered as  threat, harassment and retaliation [DC Official Code 42-3505.2] (Exhibit 12)

25.  On May 10, 2017  Plaintiff, Dolores  Barot  contradicted  The Meiners Law Firm, PLLC

letter. She vehemently objected that she received a Letter in September, 2016 for any violation.  She

said that she cannot accept that their  unit is "unclean and unsanitary".  Added that their grandson

Xander who was "premature by birth",  live in the Plaintiffs Unit and grew up healthy. (Exhibit 13)


### Defendant AMC violated DC Tenant Bill of Rights No. 6 (14 DCMR 106, 301
### & 400-999) Also known as the "*warranty of habitability*".  (The landlord must
maintain your apartment and all common areas of the building in compliance with the housing code,
including keeping the premises safe x x x x x x x" (Exhibit 14)

26. On May 24, 2017 an investigator from Department of Consumer and Regulatory Affairs

(DCRA) Mr. Ruben Legaspi  inspected the property. After the inspection, Mr. Legaspi went to the

Aldon's Rental Office to gain the record for the plaintiffs unit but Ms. Simpson was not there. He had

left messages to obtain said records but Ms. Simpson never returned his calls.

27.  On November 6, 2017, Plaintiffs received the DCRA's Inspection Report that reads:

> Research for permits do not go that far back 16 years ago, however, bedroom #2 does have
> one window which does not meet today's building code requirement for egress. On the other
> side of the bedroom wall is the community laundry room for the building and there is a window
> which appears to be at the same height as the window in bedroom #2. As a note, Bedroom #1
> also has windows and the heights of the bottom of the window sills to the floor appears to be
> lower than the window in bedroom #2." (Exhibit 15 [Inspection Report] and Exhibit 16
> [pictures])


### EVIDENCES TO SUPPORT CHARGES OF  DIRECT & INDIRECT DISCRIMINATION:

6

**Defendant AMC Violated DC TENANT BILL OF RIGHTS.  [Disclosure of Information –
DC Official Code 42-3502.22 & 13(d)]**

28.  AMC defrauded and abused Plaintiffs. They were housed and made to rent a

dangerous apartment unit.  **AMC DID NOT DISCLOSE** prior to their transfer/occupancy,  that

what plaintiffs will be renting/occupying is an illegal in-law unit which is against DC TENANT BILL

OF RIGHTS. [Disclosure of Information – DC Official Code 42-3502.22 & 13(d)]  **(Exhibit 17)**

## COMPARATORS

### Plaintiffs were treated differently by Defendant

29.  AMC's  Employee Housing  which is part of the condition of employment  of Plaintiff

Constante  Barot, applies to every AMC's employees  but it was biased against  Plaintiffs. They were

treated worst  than  Constante's  "similarly situated  co-employee".

> *[To be similarly situated to another employee, [the plaintiff] must show that the
> employee is directly comparable in all material respects."] (Brown v. Illinois
> Dept of Naural Resources)*

## Defendant AMC Violated DC Tenant Bill of Rights (No. 10 Discrimination ,
## DC Official Code 2-1401.01 et seq)] and The  Federal Fair Housing Acts

30.  The apartment units  of  Constante Barot's  Filipino and  American counterparts  are

real  two bedroom apartments while Plaintiffs  were provided a  DIFFERENT TYPE  ie  the 2nd

Bedroom was illegaly constructed  from part of the Laundry Room and fire hazard too. This is  illegal

**Discrimination under the Fair Housing Law in the District and  The District of Columbia Tenant**

**Bill of Rights [(Disclosure of Information, (e))  (Exhibit 18)**

31. The occupants in the apartment unit of Plaintiff's Filipino counterpart are four (4) adults and one child, **SIMILARLY,** the occupants in the Plaintiffs' apartment unit are four (4) adults and one child as well.

32. BUT on May 8, 2017, AMC was very unethical in coercing plaintiffs to sign a new lease contract for their apartment unit, restricting the number of occupants from four (4) adults and one child TO ONLY TWO (2) - Plaintiffs Constante Barot and Dolores Barot thus creating a different occupancy standard on their two Bedroom Apartment unit, which TREATMENT was illegal and unacceptable.

33. Such acts are also against [**DC Tenant Bill of Rights (No. 10 Discrimination** "renting on unfavorable terms" **DC Official Code 2-1401.01 et seq)] and The Federal Fair Housing Act** (Creates unreasonable restrictions on the number of people that may live in the rental unit ; and Creates different terms or standards for certain tenants ) (Exhibit 19)

## Defendant AMC Violated DC Tenant Bill of Rights No. 9 , Quiet Enjoyment and Retaliation   DC Official Code 42-3505.02)]

34. On June 20, 2017, Ms. Maria Rico, AMC's Vice President talked to Plaintiff Constante Barot in their Bethesda Office, she said that she has talked to someone in Housing and AMC has done nothing illegal which is UNTRUE and a cover up/pretext for their wrongdoings. Added that if Plaintiff Dolores Barot will continue with her complaint, Plaintiff's discounted rental concession benefit would be taken away.

35.   This behaviour makes Plaintiff feel intimidated /offended which could be construed as

harassment and is unlawful under DC Tenant Bill of Rights No. 9  (Quiet Enjoyment and Retaliation )

which reads:

> " The landlord may not retaliate  against you for exercising any right of tenancy.  Retaliation
> includes unlawfully seeking to recover possession of your unit, to increase the rent, to decrease
> services or increase your obligations; and also includes violating your privacy, harassing you, or
> refusing to honor your lease (DC Official Code 42-3505.02)  [Exhibit 20]

### Defendant  AMC Violated Fair Housing Law in the District

**36.**   Plaintiff' Constante P. Barot's  discounted rent is higher than his  American and

younger counterpart   whose apartment unit is a  regular two bedroom apartment.  (Exhibit 21)

## Facts related to the Statute of Limitations and Filing

37.   On September 13, 2017 –  Plaintiff Constante Barot filed EEOC Form 5 – Charge of

Discrimination (Exhibit 22) ;

38.   On September 13, 2017 – the EEOC issued  Dismissal and Notice of Suit Rights

(Exhibit 23)

39.   On September 27, 2017 – Plaintiff received  US Dept. of HUD Letter stating that

plaintiff's **housing is a condition of employment** as stated in the Lease Agreement, Addendum

Employee Housing, section #1". (Exhibit 24).

40. Since Plaintiff Constante Barot's housing is part of his condition of employment,

therefore, Employment Discrimination and  violations of Plaintiffs' rights has been committed by

Aldon Management Corporation (AMC).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court to enter judgment in favor of

plaintiffs and award the   following relief:

1.  An Order declaring that Defendant, Aldon Management Corp. (AMC) violated

    a.  Title VII of the Civil Rights Act of 1964 as amended,
    b.  the Age Discrimination in Employment Act;.
    c.  Three counts of  District of Columbia Tenant Bill of Rights No.9 (Quiet Enjoyment and Retaliation – DC Official Code42-3505.02
    d.  the Federal Fair Housing Acts ;
    e.  Three counts of   Fair Housing Law in the District
    f.  DC Tenant Bill of Rights No. 6 (14 DCMR 106, 301 & 400-999)  also known as the *"warranty of habitability"*
    g.  DC Tenant Bill of Rights No. 3    (Disclosure of Information – DC Official Code 42-3505.22 );
    h.  DC Tenant Bill of Rights No. 10 (Discrimination – DC Official Code 2-1401.01 et seq);

2. Award Plaintiffs  emotional distress damages,

3. Court costs

4. Monetary damages by way of Refund for rent paid in the amount of $20,000.00 and

5. Such other equitable reliefs that this Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial in  this case.

Dated: November 28, 2017

Respectfully submitted:

CONSTANTE P. BAROT
Plaintiff

DOLORES A. BAROT
Plaintiff

District of Columbia: SS
Subscribed and Sworn to before me
this _30th_ day of _November_ _2012_

Mardoqueo M. Sanchez, Notary Public, D.C.
My commission expires July 31, 2021



US SUPERIOR COURT
Washington, DC

Constante P. Barot and Dolores A. Barot
6707, 14th St., NW Apt. A
Washington, DC 20012
    Plaintiffs

versus

Aldon Management
8180 Wisconsin Avenue
Bethesda, MD 20814
    Defendant

# LIST OF EXHIBITS

Exhibit 1 - Lease Contract (Doreen) 5910 , 14th St. NW Apt. #303, Washington, DC for
    $715.00/mo. The Building was managed/owned by Aldon Management

Exhibit 2 Aldon Management Corp. (AMC) Employee Housing

Exhibit 3 Lease Contract - 6707, 14th Street, NW Apt. A Washington, DC 20012 Occupants: Constante
    Barot, Dolores Barot and Sofia Barot

Exhibit 4 Lease Contract -6707, 14th Street, NW Apt. A Washington, DC 20012 - Amon
    Holmes (Sofia's husband) included

Exhibit 5 April 25, 2017, Notice for Spring 2017 Unit Inspection and Preventive Maintenance.

Exhibit 6 April 25, 2017, Dolores Barot personally complained regarding the picture taking in their
    apartment by the Manager because they felt that their privacy have been invaded.

Exhibit 7 May 3, 2017 Notice of Reinspection

Exhibit 8 Aldon's Occupancy Standard Sheet

Exhibit 9 -- Federal Fair Housing Act -- creates unreasonable restrictions on the number of occupants
    that may live in the rental unit.

Exhibit 10 - Fair Housing Law in the District. - Provide different housing, units or services because
    of particular traits

Exhibit 11 - Plaintiff Dolores Barot's fax to Ms. Daria Simpson, Manager, cc M. Rico
    explaining why Plaintiffs did not sign the new lease contract.

1

Exhibit No. 12 - May 05, 2017   Letter from Aldon's Lawyer, Michele C. Meiners of The Meiners Law Firm, PLLC that reads: "Notice to Correct or Vacate"

Exhibit No. 13 - May 10, 2017   fax by Plaintiff, Dolores Barot contradicting  The Meiners Law Firm, PLLC Letter

Exhibit Nos.  14 -DC TENANT BILL OF RIGHTS NO. 6 (BUILDING CONDITIONS) "The landlords must ensure that your unit and all common areas are safe xx xxx xx  This is known as the *"warranty of habitability"* Pictures of the  windows  in Bedrooms 1 and 2

Exhibit No.  15  DCRA Inspection Report

Exhibit 16    Pictures  (2nd Bedroom; 1st Bedroom; Laundry Room; Apt. A entrance)

Exhibit 17 – DC TENANT BILL OF RIGHTS NO. 3.  (Disclosure of Information, DC Official Code 42-3502.22 & .13(d)

Exhibit No. 18 - [DC Tenant Bill of Rights (No. 10 Discrimination "renting on unfavorable terms"  DC Official Code 2-1401.01 et seq)] and The  Federal Fair Housing Act (Creates unreasonable restrictions on the number of people that may live in the rental  unit ; and Creates different terms or standards for certain tenants )

Exhibit 19 – The Federal Fair Housing Act -  creates different terms or standards for certain tenants

Exhibit No. 20 - DC Tenant Bill of Rights No. 9 Quiet Enjoyment and Retaliation which reads: " The landlord may not retaliate  against you for exercising any right of tenancy.  Retaliation includes unlawfully seeking to recover possession of your unit, to increase the rent, to decrease services or increase your obligations; and also includes violating your privacy, harassing you, or refusing to honor your lease (DC Official Code 42- 3505.02)

Exhibit 21-  ADDENDUM Employee Housing Discount - Comparator – Constante Barot and Robert Weaver, Jr.

Exhibit 22 -  EEOC Form 5 – Charge of Discrimination

Exhibit 23- EEOC- Dismissal and Notice of  Suit Rights

Exhibit 24 -  September 27, 2017 – US Dept. of HUD Letter stating that their review of our inquiry indicates that our housing is a condition of employment as stated in the Lease Agreement, Addendum Employee Housing, section # 1.

 ------------------- OOO-----------------------



## EXHIBIT 2

### Aldon Management Corp. (AMC) Employee Housing

Addendum to the Lease dated July 24, 2003.  It is the policy of the Employer that the Employee live on the property as a condition of Employment

Employee Housing

WHEREAS, the Property Manager is the Employer of the Employee/Tenant hereunder; and

WHEREAS, the Employer and Employee have entered into a certain Lease titled "Aldon Management Corporation Apartment Lease Agreement" of even date (the "Lease"); and

WHEREAS, this Addendum is to make certain additions and exceptions to the Lease consistent with the Employer/Employee relationship;

NOW THEREFORE, in consideration of the mutual promises contained in the Lease and in this Addendum, the parties agree as follows:

1. This Addendum to the Lease dated July 24, 2003, is being executed by the Employer and the Employee/Tenant. It is the policy of the Property Manager ("Employer") that the Employee live on the property as a condition of employment.

2. The Total Rent includes the Monthly Rent for the unit of $855.00 per month, Monthly Parking Fee of $0.00, and Annual Air Conditioning fee of $200.00 per A/C unit. So long as the Employee is employed by the Employer the Total Rent shall be abated without having come due. At such time as the employment relationship has terminated, the Employee shall have ten (10) days from delivery of notice from the Employer to elect either: (1) to terminate the Lease and surrender possession of the Unit by the end of the month following notice of such election; or (2) to pay any outstanding balance of the Security Deposit loan and to continue the lease term and be responsible to pay the rent, payments to be due and payable as of the first day of the month following notice of such election, provided, however, regardless of the remaining term of the Lease the Employee may terminate the Lease on not less than sixty (60) days notice at any time after the initial election to continue the Lease.  Should the Employee fail to deliver a notice of election within the ten (10) days, the Employee shall be deemed to have elected to terminate the Lease, as provided in (1) in the prior sentence.  Notwithstanding anything herein to the contrary; (1) actions by the Employee, or attributable under the Lease to the Employee, which would result in an eviction for a tenant who is not an employee shall allow the Employer to terminate this Lease; and (2) any suspension of an Employee based upon actions which the Employer reasonably determines is a danger to others, the property, or the Employee, the Employer may immediately terminate this Lease.

3. The rental rate is subject to change based upon increases given to other tenants of comparable units. The failure of the Employer to provide actual written notice of any change in the rental rate for the Unit prior to the time rent is to be paid currently by the Employee hereunder shall not excuse the Employee from being responsible to pay the then current rent amount at the time of the Employee's election to continue the Lease.

4. The Employee may not sublet the premises until such time as the Employee has elected to continue the lease term in accordance with paragraph 2 above and after such election in accordance with paragraph 23 of the Lease.

5. This Addendum is to provide certain exceptions and additions to the provisions of the Lease.  The terms of the Lease and the Addendum are to be read together, provided, any conflict between the Lease and the Addendum shall be read to give full effect to the provisions of the Addendum.

Property Manager/Employer

Aldon Management Corporation

By: _____
Tim Saunders

Employee/Tenant

_____
Constante Barot

EXHIBIT 3

Aldon Management Corp. (AMC)

Apartment Lease Agreement

6707, 14th St., NW Apt A, Washington, DC 20012

Occupants:  Constante P. Barot, Dolores A. Barot & Sofia Barot

(Note that $715.00 transferred from 5910 #303)
## ALDON MANAGEMENT CORPORATION
## APARTMENT LEASE AGREEMENT

DISTRICT OF COLUMBIA

1.  **LEASE.** Aldon Management Corp., 7900 Wisconsin Avenue, Suite 403, Bethesda, Maryland 20814, hereinafter designated "Landlord", in consideration of and subject to the terms, conditions and covenants set forth in this Lease does hereby lease to **Constante Barot** (collectively "Tenant"). Tenant hereby leases from Landlord, the dwelling unit known as Apartment No. **A**, located at **6707 14th Street, N.W., Washington, DC 20012**, to be occupied only as a private residence for those persons listed on the application and for no other persons except with the written approval of Landlord. Each Tenant listed above shall be jointly and severally responsible to the Landlord for full performance under each and every covenant and condition of this Lease and for compliance with applicable law.

2.  **LEASE TERM.** This Lease shall be for a term of **12** months and **6** days, which term shall commence on the **26th** day of **July, 2003** and shall terminate at Midnight on the last day of **July, 2004.** Notwithstanding the foregoing, if any payment by Tenant of the security deposit or initial installments of rent is dishonored by Tenant's bank, then this Lease shall be deemed void ab initio and Tenant shall be considered a trespasser and not a tenant.

   After the initial term, this Lease RENEWS AUTOMATICALLY on a month to month basis and continues to renew each month unless a ONE MONTH written termination notice is given by either party. Tenant must deliver a ONE MONTH written notice of their intention to vacate on or before the last day of the month. This notice will be effective as of the first day of the next full month through the last day of the full month. Tenant agrees that Notice given by any Tenant is effective as to all Tenants. If Tenant, after having given effective notice of their intention to vacate, fails to timely surrender possession, Tenant shall be liable for rent at double the rent during the holdover period.

   Landlord is not responsible for damages if Landlord is unable to give Tenant possession of the apartment at the start of this lease. The move-in date will be postponed until the apartment becomes available for occupancy by Tenant. Rent, however, will only be charged from the date on which possession of the apartment is made available to Tenant. If Landlord cannot give possession within 60 days after the first day of the initial term stated above, Landlord or Tenant may cancel this lease by delivery of written notice to the other.

3.  **RENT.** a. The total rent for the apartment for the initial term of this Lease shall be **$10,260.00** payable in equal monthly installments of **$855.00,** the first installment payable upon execution of this Lease, and each remaining installment payable in advance, without setoff, deduction or demand, before the first (1st) day of each month to and at the offices of Aldon Management Corp., 7900 Wisconsin Avenue, Suite 403, Bethesda, MD 20814, or assigns. In the event this Lease commences on a date other than the first day of the month, the first installment shall include an amount equal to the monthly installment pro-rated for the number of days the apartment is to be occupied before the first full month of the term. Tenant shall take possession on **July 26, 2003** and pay **$165.48** as rent for the period July 26, 2003 to July 31, 2003.

4.  **OCCUPANCY.** Tenant covenants that they shall use and occupy the apartment only as a residential dwelling and private residence and for no other purpose whatsoever, by the following named individuals and no others: **Constante Barot, Dolores Barot, and Sofia Barot.** If there is any change in the foregoing named occupants, such change must be approved in advance in writing by Landlord by paying an administrative review fee of $50.00 and following the same application procedure and meeting the same criteria as other prospective tenants (except for afterborn children). Landlord reserves the right to uniformly and impartially regulate the maximum number of occupants permitted to reside within this size dwelling unit. The maximum number of occupants for this unit is **three (3)**. Exceeding the permitted number of residents shall be a material breach of the Lease. Guests visiting Tenant may not reside in the apartment for more than FOURTEEN DAYS during any calendar year, unless written permission is first secured from Landlord. Tenant's guests shall abide by all applicable covenants and rules herein contained, so that a breach by a guest or visitor shall be treated as a breach by Tenant himself. Tenant shall not accept any boarders, roomers or live-ins. Tenant shall not carry on any trade, profession or business, including but not limited to, babysitting or daycare service, school, course of instruction or entertainment or teach instrumental or vocal music, dramatics, gymnastics, dancing or the like in the apartment.

5.  **SECURITY DEPOSIT.** a. Receipt: Landlord acknowledges that Tenant has deposited with Landlord a security deposit in the amount of **$855.00,** which security deposit does not exceed one (1) month's rent, as security for Tenants' obligations and performance under the Lease. Landlord shall deposit the security deposit in an interest bearing escrow account in a federally insured bank or savings institution within the District of Columbia in accordance with law. Landlord will post the prevailing passbook interest rate for each six-month period on January 1 and July 1 of each year. Security deposit paid by: **Constante Barot. (Note that $715.00 transferred from 5910 #303)**

   b. Deductions during term of Lease: Landlord shall be authorized to deduct from the security deposit, from time to time, payments for accrued rent plus any late charges or bad check fees or any damages incurred by reason of any non-compliance by Tenant with any provision of the Lease. This section does not preclude the Landlord or Tenant from recovering other damages to which they may be entitled under this Lease or at law.

   c. Return of Security Deposit: The Landlord shall return the security deposit paid by the Tenant, and any interest due the Tenant on that deposit, less any damages rightfully withheld in accordance with D.C. law. It is understood and agreed that the security deposit, or any portion thereof, may be withheld for damages to the premises caused by Tenant, Tenant's family, agents, employees, or social guests in excess of ordinary wear and tear. Landlord may also withhold for damages incurred by Landlord as a result of Tenant's failure to fully and faithfully comply with and observe all of the terms, covenants, and conditions of this Agreement, lost future rents and unpaid rent or other charges, including unpaid utilities. In such circumstances, the Landlord shall notify Tenant in writing, to be delivered to the Tenant personally, or by certified mail at the Tenant's last known address, within forty-five (45) days of the termination of tenancy, of the Landlord's intention to withhold or apply the monies toward defraying the cost of expenses. The Landlord, within thirty (30) days after notification to the Tenant of the intention to withhold, shall tender a refund of the balance of the deposit or payment, including interest, no used to defray such expenses, and at the same time give the Tenant an itemized statement of the repairs and other uses to which the monies were applied and the cost of each repair or other use. In the event Tenant is evicted for non-payment of rent or for breach of a condition or covenant of this Lease prior to termination of the tenancy, or in the event Tenant has abandoned the apartment prior to termination of the tenancy, then: (I) within forty-five (45) days of being evicted or of abandoning the apartment, Tenant must first demand return of the security deposit by giving to Landlord written notice by first class mail (notice must specify Tenant's new address); (II) within forty-five (45) days of the receipt of the notice from Tenant, Landlord shall send written notice to Tenant, by first class mail, which shall contain a list of damages claimed by Landlord, as allowed by law, together with a statement of the costs actually incurred; and (III) within thirty (30) days of the receipt of the written notice from Tenant, Landlord shall return the security deposit to Tenant together with interest as provided by law, less any damages rightfully withheld.

   d. Deductions for Rent by Tenant: Tenant shall not deduct his last month's rent or any month's rent or charge from the security deposit or

6.  RENT PAYMENT. All apartment and parking rent is due and payable in advance

#-(2)

After the initial term, this Lease RENEWS AUTOMATICALLY on a month to month basis and continues to renew each month unless a ONE MONTH written termination notice is given by either party. Tenant must deliver a ONE MONTH written notice of their intention to vacate on or before the last day of the month. This notice will be effective as of the first day of the next full month through the last day of the full month. Tenant agrees that Notice given by any Tenant is effective as to all Tenants. If Tenant, after having given effective notice of their intention to vacate, fails to timely surrender possession, Tenant shall be liable for rent at double the rent during the holdover period.

Landlord is not responsible for damages if Landlord is unable to give Tenant possession of the apartment at the start of this lease. The move-in date will be postponed until the apartment becomes available for occupancy by Tenant. Rent, however, will only be charged from the date on which possession of the apartment is made available to Tenant. If Landlord cannot give possession within 60 days after the first day of the initial term stated above, Landlord or Tenant may cancel this lease by delivery of written notice to the other.

**3.**    **RENT.**   a. The total rent for the apartment for the initial term of this Lease shall be **$10,260.00**  payable in equal monthly installments of **$855.00,**  the first installment payable upon execution of this Lease, and each remaining installment payable in advance, without setoff, deduction or demand, before the first (1st) day of each month to and at the offices of Aldon Management Corp., 7900 Wisconsin Avenue, Suite 403, Bethesda, MD 20814, or assigns. In the event this Lease commences on a date other than the first day of the month, the first installment shall include an amount equal to the monthly installment pro-rated for the number of days the apartment is to be occupied before the last full month of the term. Tenant shall take possession on **July 26, 2003** and pay **$165.48** as rent for the period **July 26, 2003 to July 31, 2003.**

**4.**    **OCCUPANCY.**  Tenant covenants that they shall use and occupy the apartment only as a residential dwelling and private residence and for no other purpose whatsoever, by the following named individuals and no others: **Constante Barot, Dolores Barot, and Sofia Barot.** If there is any change in the foregoing named occupants, such change must be approved in advance in writing by Landlord by paying an administrative review fee of $50.00 and following the same application procedure and meeting the same criteria as other prospective tenants (except for afterborn children). Landlord reserves the right to uniformly and impartially regulate the maximum number of occupants permitted to reside within this size dwelling unit. The maximum number of occupants for this unit is **three (3).** Exceeding the permitted number of residents shall be a material breach of the Lease. Guests visiting Tenant may not reside in the apartment for more than FOURTEEN DAYS during any calendar year, unless written permission is first secured from Landlord. Tenant's guests shall abide by all applicable covenants and rules herein contained, so that a breach by a guest or visitor shall be treated as a breach by Tenant himself. Tenant shall not accept any boarders, roomers or live-ins. Tenant shall not carry on any trade, profession or business, including but not limited to, babysitting or daycare service, school, course of instruction or entertainment or teach instrumental or vocal music, dramatics, gymnastics, dancing or the like in the apartment.

**5.**    **SECURITY DEPOSIT.**  a. Receipt: Landlord acknowledges that Tenant has deposited with Landlord a security deposit in the amount of **$855.00,** which security deposit does not exceed one (1) month's rent, as security for Tenant's obligations and performance under the Lease. Landlord shall deposit the security deposit in an interest bearing escrow account in a federally insured bank or savings institution within the District of Columbia in accordance with law. Landlord will post the prevailing passbook interest rate for each six-month period on January 1 and July 1 of each year. Security deposit paid by: **Constante Barot. (Note that $715.00 transferred from 5910 #303)**

b. Deductions during term of Lease: Landlord shall be authorized to deduct from the security deposit: from time to time, payments for accrued rent plus any late charges or bad check fees or any damages incurred by reason of any non-compliance by Tenant with any provision of the Lease. This section does not preclude the Landlord or Tenant from recovering other damages to which they may be entitled under this Lease or at law.

c. Return of Security Deposit: The Landlord shall return the security deposit paid by the Tenant, and any interest due the Tenant on that deposit, less any damages rightfully withheld in accordance with D.C. law. It is understood and agreed that the security deposit, or any portion thereof, may be withheld for damages to the premises caused by Tenant, Tenant's family, agents, employees, or social guests in excess of ordinary wear and tear. Landlord may also withhold for damages incurred by Landlord as a result of Tenant's failure to fully and faithfully comply with and observe all of the terms, covenants, and conditions of this Agreement, lost future rents and unpaid rent or other charges, including unpaid utilities. In such circumstances, the Landlord shall notify Tenant in writing, to be. delivered to the Tenant personally, or by certified mail at the Tenant's last known address, within forty-five (45) days of the termination of tenancy, of the Landlord's intention to withhold or apply the monies toward defraying the cost of expenses. The Landlord, within thirty (30) days after notification to the Tenant of the intention to withhold, shall tender a refund of the balance of the deposit or payment, including interest, not used to defray such expenses, and at the same time give the Tenant an itemized statement of the repairs and other uses to which the monies were applied and the cost of each repair or other use. In the event Tenant is evicted for non-payment of rent or for breach of a condition or covenant of this Lease prior to termination of the tenancy, or in the event Tenant has abandoned the apartment prior to termination of the tenancy, then: (i) within forty-five (45) days of being evicted or of abandoning the apartment, Tenant must first demand return of the security deposit by giving to Landlord written notice by first class mail (notice must specify Tenant's new address); (ii) within forty-five (45) days of the receipt of the notice from Tenant, Landlord shall send written notice to Tenant, by first class mail, which shall contain a list of damages claimed by Landlord, as allowed by law, together with a statement of the costs actually incurred; and (iii) within thirty (30) days of the receipt of the written notice from Tenant, Landlord shall return the security deposit to Tenant together with interest as provided by law, less any damages rightfully withheld.

d. Deductions for Rent by Tenant: Tenant shall not deduct his last month's rent or any month's rent or charge from the security deposit or use such security deposit as an offset of his rent due.

**6.**    **RENT PAYMENT.**  All apartment and parking rent is due and payable by check or money order on or before the first (1) day of every month without deduction or demand at 7900 Wisconsin Avenue Suite 403, Bethesda, Maryland 20814 or at any other address designated by the Landlord.  **NO CASH WILL BE ACCEPTED. MAKE CHECK OR MONEY ORDERS PAYABLE TO: ALDON MANAGEMENT CORP.**  Landlord reserves the right to demand that all rent payments be made by certified check or money order. Payments will be applied first to all past due balances of rent and other charges owing under the Lease. The remaining portion, if any, will be applied to current rent. Written receipts shall be provided for all cash or money orders paid by Tenant to Landlord for rent, security deposit or otherwise. All deposits, fees, charges and other costs due under the Lease shall be deemed additional rent and collectible as rent. Partial payment shall not relieve Tenant of the obligation to make full and timely payment to the Landlord, unless written notice is obtained from Landlord accepting partial payment as full settlement of the particular debt or financial responsibility.

**7.**    **UTILITIES.**  The Landlord will provide as reasonably required the following utilities: Electricity, Heat, Trash Removal, Hot Water, Domestic Water and Sewer. The Tenant will arrange for and pay directly to the provider the following utilities, services, wiring, and equipment: Cable TV, and Telephone. Landlord reserves the right to charge and Tenant agrees to pay for all excessive electrical, heat or other utility usage resulting from Tenant's misuse, or failure to exercise reasonable energy conservation, or required for Tenant's use of any additional appliances and equipment in the apartment over that installed and provided under this Lease by the Landlord.

*All homes are shown and made available without respect to race, color, sex, religion, national origin, familial status or handicap.*

Initials: _CB_
Page 1 of 8

Revised 7/24/03

If a court proceeding for possession or non-payment of rent shall be commenced and a settlement or compromise effected either before or after judgment, whereby Tenant shall be permitted to retain possession of the premises, such proceeding or compromise shall not constitute a waiver of any condition or covenant contained herein or of any subsequent breach.

27.     **NOTICES.** Tenant must deliver to Landlord a ONE MONTH written notice of intention to vacate and to terminate the Lease at the end of the initial term or any month-to-month renewal term. All notices shall be in writing and given by regular mail, (except where Certified Mail is specified in this lease), to Tenant at the apartment address, or to Landlord at the office where rent is paid, and shall be deemed to have been given on the date postmarked by the United States Postal Service. Written notices to Tenant may alternatively be given by Landlord by hand delivery to Tenant or to an occupant over the age of sixteen (16) or by securely posting such written notice on the door of the apartment. **ANY NOTICE MUST BE GIVEN ON OR BEFORE THE LAST DAY OF THE MONTH, AND IS EFFECTIVE FOR THE FIRST DAY OF THE NEXT FULL MONTH THROUGH THE LAST DAY OF THE FIRST FULL MONTH.**

28.     **RULES AND POLICIES.** Tenant shall conform to Landlord's rules, regulations and policies governing the property now or anytime hereafter adopted by Landlord as may be amended from time to time and are effective when posted on the apartment, mailed by first class mail, hand delivered or otherwise brought to the notice of Tenant; the current rules and regulations are attached and made a part of the Lease, and are hereby accepted by Tenant.

29.     **MISCELLANEOUS.** Tenant agrees to pay all costs of filing suit, all writ fees and costs, and such reasonable attorneys' fees as may be awarded by the court or allowed by law, in any action taken to enforce Tenant's obligations under this Lease.

Notwithstanding any provision to the contrary in this Lease, Tenant shall look solely to the interest and property of the Landlord in and to the apartment complex property of which this Lease pertains in the event of any claim arising out of or in connection with this Lease, the Landlord/Tenant relationship, and/or Tenant's use and occupancy of the premises and no other property or assets of Landlord shall be subject to levy, execution or enforcement of any judgment or other remedy.

A copy of the license to operate this rental facility in the District of Columbia may be inspected by Tenant during normal business hours in the management office.

30.     **RECEIVING AREA:** In the event that the Landlord shall establish a designated area for the receiving and delivery of packages, parcels and the like, excluding certified or registered mail, for and on behalf of tenants and occupants, then the Tenant at his sole risk may utilize this service. The Landlord will not charge for this service and assumes no liability for any package, parcel, and the like left in the Receiving Area. Landlord has no obligation to continue this service or offer this service as a part of this Lease. If there is not a designated Receiving Area, then employees of Landlord are prohibited from receiving or holding for delivery of packages, parcels and the like, including certified or registered mail, for and on behalf of tenants and occupants, and should any employee receive or hold any such packages, parcels or the like, he in doing so shall be the agent of the Tenant and not of the Landlord.

31.     **ADDITIONAL SERVICES:** Landlord may choose to make available additional services, including, but not limited to cable, high-speed Internet access, or other telecommunication platforms. Landlord has no obligation to continue to make these services available or offer the availability of these services as a part of this Lease.

32.     **TENANT'S OBLIGATIONS TO NOTIFY MANAGEMENT.** a. Lead Disclosure. If you received a pamphlet titled "Protect Your Family From Lead In Your Home" at or before the time you entered this Lease, your unit is in a building which was built prior to 1978. As a result, you were given the opportunity to know as a result of a third-party inspection of the property, where lead was found to exist in the building. Should you become aware of peeling or flaking paint in your apartment, or elsewhere in the building, you are to notify the property manager of such condition.

b. Relations to Other Tenants: Tenant will act to respect the rights of other tenants and will not harass other tenants, nor act to cause other tenants to reasonably perceive a hostile or unduly unpleasant environment. Should Tenant have a complaint concerning either: (1) violation of the "Property Rules", or of the "Apartment Lease Agreement" by other tenants or occupants; or (2) conduct by other tenants or occupants which you feel is detrimental to Tenant's enjoyment of the tenancy and that such conduct may be illegal (civil or criminal), in either case such violations or conduct should be reported by notice to the Landlord's resident manager. In such situations, the Landlord's resident manager will act reasonably to determine the facts underlying the complaint, provided, the Landlord will not be required to conduct a hearing, or act as a trier of fact; rather, the Landlord will act reasonably to ascertain the facts and will thereafter act reasonably to resolve the issues involved. The process is to protect the rights of all tenants, including those who may have allegations made against them.

c. Relations to Management: The Landlord employs a number of individuals to properly maintain and service the building and Tenant's unit. Should you reasonably feel that the conduct of any such individual is detrimental to Tenant's enjoyment of the tenancy and that such conduct may be illegal (civil or criminal), such conduct should be reported either to the Landlord's resident manager, or to the main office of Aldon Management Corporation at (301) 656-5998. Aldon Management Corporation, as the agent of the Owner, will act reasonably to ascertain the facts and will thereafter act reasonably to resolve the issues involved, provided, however, Aldon Management Corporation will not be required to hold a hearing, or act as a trier of fact. The process is to protect the rights of all tenants and of our employees, including those who may have allegations made against them.

## IMPORTANT - READ CAREFULLY

Tenant SPECIFICALLY acknowledges that he/she has carefully read all sections of this Lease, understands all of its terms, or has had the opportunity to have the terms of the Lease explained to him/her/them by Tenant's own independent advisor.

In Witness whereof, the parties, for themselves and their respective successors, executors, heirs and assigns, for good and valuable consideration have entered into this Apartment Lease on the date first set forth above.

WITNESS

ALDON MANAGEMENT CORP.

By:

Tim Saunders

Date:

TENANT:

Constance Baront                                   SS=



EXHIBIT 4

Aldon Management Corp. (AMC)

Apartment Lease Agreement

6707, 14th St., NW Apt A, Washington, DC 20012


Occupants:  Constante P. Barot, Dolores A. Barot ; Sofia Barot and Amon Holmes



# ALDON MANAGEMENT CORPORATION
## APARTMENT LEASE AGREEMENT

DISTRICT OF COLUMBIA

1. LEASE. Aldon Management Corp., 7900 Wisconsin Avenue, Suite 403, Bethesda, Maryland 20814, Agent for N/A, hereinafter designated "Landlord", in consideration of and subject to the terms, conditions and covenants set forth in this Lease does hereby lease to

Constante Barot

(collectively "Tenant"). Tenant hereby leases from Landlord, the dwelling unit known as Apartment No. A, located at

6707 14th St. NW, Washington DC, 20012

to be occupied only as a private residence for those persons listed on the application and for no other persons except with the written approval of Landlord. Each Tenant listed above shall be jointly and severally responsible to the Landlord for full performance under each and every covenant and condition of this Lease and for compliance with applicable law.

2. LEASE TERM. This Lease shall be for a term of 1 months and ______ days, which term shall commence on the 1 day of June, 2009 and shall terminate at Midnight on the Last day of June, 2009. Notwithstanding the foregoing, if any payment by Tenant of the security deposit or initial installments of rent is dishonored by Tenant's bank, then this Lease shall be deemed void ab initio and Tenant shall be considered a trespasser and not a tenant.

After the initial term, this Lease RENEWS AUTOMATICALLY on a month to month basis and continues to renew each month unless a ONE MONTH written termination notice is given by either party. Tenant must deliver a ONE MONTH written notice of their intention to vacate on or before the last day of the month. This notice will be effective as of the first day of the next full month through the last day of the full month. Tenant agrees that Notice given by any Tenant is effective as to all Tenants. If Tenant, after having given effective notice of their intention to vacate, fails to timely surrender possession, Tenant shall be liable for rent at double the rent during the holdover period.

Landlord is not responsible for damages if Landlord is unable to give Tenant possession of the apartment at the start of this lease. The move-in date will be postponed until the apartment becomes available for occupancy by Tenant. Rent, however, will only be charged from the date on which possession of the apartment is made available to Tenant. If Landlord cannot give possession within 60 days after the first day of the initial term stated above, Landlord or Tenant may cancel this lease by delivery of written notice to the other.

3. RENT. a. The total rent for the apartment for the initial term of this Lease shall be $895.00 payable in equal monthly installments of $895.00, the first installment payable upon execution of this Lease, and each remaining installment payable in advance, without setoff, deduction or demand, before the first (1st) day of each month to and at the offices of Aldon Management Corp., 7900 Wisconsin Avenue, Suite 403, Bethesda, MD 20814, or assigns. In the event this Lease commences on a date other than the first day of the month, the first installment shall include an amount equal to the monthly installment pro-rated for the number of days the apartment is to be occupied before the first full month of the term. Tenant shall take possession on ______ and pay ______ as rent for the period ______ to ______.

b. Parking. In the event Landlord provides on-site parking privileges, Tenant shall pay additional rent of $0.00 per month. Payment of Parking Rental required for ____ spaces: YES ___ NO ___.

Payment of parking rent does not guarantee use of a parking space, which is made available on a first come basis. Initial: ______

4. OCCUPANCY. Tenant covenants that they shall use and occupy the apartment only as a residential dwelling and private residence and for no other purpose whatsoever, by the following named individuals and no others:

Constante Barot and Delores Barot and Sofia Barot and Amon Holmes

If there is any change in the foregoing named occupants, such change must be approved in advance in writing by Landlord by paying an administrative review fee of $50.00 and following the same application procedure and meeting the same criteria as other prospective tenants (except for afterborn children). Landlord reserves the right to uniformly and impartially regulate the maximum number of occupants permitted to reside within this size dwelling unit. The maximum number of occupants for this unit is 4. Exceeding the permitted number of residents shall be a material breach of the Lease. Guests visiting Tenant may not reside in the apartment for more than FOURTEEN DAYS during any calendar year, unless written permission is first secured from Landlord. Tenant's guests shall abide by all applicable covenants and rules herein contained, so that a breach by a guest or visitor shall be treated as a breach by Tenant himself. Tenant shall not accept any boarders, roomers or live-ins. Tenant shall not carry on any trade, profession or business, including but not limited to, babysitting or daycare service, school, course of instruction or entertainment or teach instrumental or vocal music, dramatics, gymnastics, dancing or the like in the apartment.

5. SECURITY DEPOSIT. a. Receipt: Landlord acknowledges that Tenant has deposited with Landlord a security deposit in the amount of $500.00 which security deposit does not exceed one (1) month's rent, as security for Tenants' obligations and performance under the Lease. Landlord shall deposit the security deposit in an interest bearing escrow account in a federally insured bank or savings institution within the District of Columbia in accordance with law. Landlord will post the prevailing passbook interest rate for each six month period on January 1 and July 1 of each year. Security deposit paid by: Constante Barot

b. Deductions during term of Lease: Landlord shall be authorized to deduct from the security deposit, from time to time, payments for accrued rent plus any late charges or bad check fees or any damages incurred by reason of any non-compliance by Tenant with any provision of the Lease. This section does not preclude the Landlord or Tenant from recovering other damages to which they may be entitled under this Lease or at law.

c. Return of Security Deposit: The Landlord shall return the security deposit paid by the Tenant, and any interest due the Tenant on that deposit, less any damages rightfully withheld in accordance with D.C. law. It is understood and agreed that the security deposit, or any portion thereof, may be withheld for damages to the premises caused by Tenant, Tenant's family, agents, employees, or social guests in excess of ordinary wear and tear. Landlord may also withhold for damages incurred by Landlord as a result of Tenant's failure to fully and faithfully comply with and observe all of the terms, covenants, and conditions of this Agreement, lost future rents and unpaid rent or other charges, including unpaid utilities. In such circumstances, the Landlord shall notify Tenant in writing, to be delivered to the Tenant personally, or by certified mail at the Tenant's last known address, within forty-five (45) days of the termination of tenancy, of the Landlord's intention to withhold or apply the monies toward defraying the cost of expenses. The Landlord, within thirty (30) days after notification to the Tenant of the intention to withhold, shall tender a refund of the balance of the deposit or payment, including interest, not used to defray such expenses, and at the same time give the Tenant an itemized statement of the repairs and other uses to which the monies were applied and the cost of each repair or other use. **In the event Tenant is evicted for non-payment of rent or for breach of a condition or covenant of this Lease prior to termination of the tenancy, or in the event Tenant has abandoned the apartment prior to termination of the tenancy, then: (i) within forty-five (45) days of being evicted or of abandoning the apartment, Tenant must first demand return of the security deposit by giving to Landlord written notice by first class mail (notice must specify Tenant's new address); (ii) within forty-five (45) days of the receipt of the notice from Tenant, Landlord shall send written notice to Tenant, by first class mail, which shall contain a list of damages claimed by Landlord, as allowed by law, together with a statement of the costs actually incurred; and (iii) within thirty (30) days of the receipt of the written notice from Tenant, Landlord shall return the security deposit to Tenant together with interest as provided by law, less any damages rightfully withheld.**

***All homes are shown and made available without respect to race, color, sex, religion, national origin, familial status or handicap.***

Initials: CB

Revised 5/7/09

... withhold its last month's rent or any month's rent or charge from the security dep...

6. **RENT PAYMENT.** All apartment and parking rent is due and payable by check or money order on or before the first (1) day of every ... without deduction or demand at 7900 Wisconsin Avenue Suite 403, Bethesda, Maryland 20814 or at any other address designated by the Landlord. **NO CASH WILL BE ACCEPTED. MAKE CHECK OR MONEY ORDERS PAYABLE TO: ALDON MANAGEMENT CORP.** Landlord reserves the right to ... that all rent payments be made by certified check or money order. Payments will be applied first to all past due balances of rent and other charges owing under Lease. The remaining portion, if any, will be applied to current rent. Written receipts shall be provided for all cash or money orders paid by Tenant to Landlord ... rent, security deposit or otherwise. All deposits, fees, charges and other costs due under the Lease shall be deemed additional rent and collectible as rent. Partial payment shall not relieve Tenant of the obligation to make full and timely payment to the Landlord, unless written notice is obtained from Landlord accepting p... payment as full settlement of the particular debt or financial responsibility.

7. **UTILITIES.** The Landlord will provide as reasonably required the following utilities: Electricity, Heat, Trash Removal, Hot Water, Domestic Water and Sewer. The Tenant will arrange for and pay directly to the provider the following utilities, services, wiring, and equipment: Cable TV, Telep... ______________________________. Landlord reserves the right to charge and Tenant agrees to pay for all excessive electrical, heat or other utility usage resulting from Tenant's misuse, or failure to exercise reasonable energy conservation, or required for Tenant's use of any additional appliances and equipment in the apartment over that installed and provided under this Lease by the Landlord.

**Air Conditioning.** If the apartment is wired for installation of air conditioning units and if the electricity is furnished by the Landlord, the Tenant sha... pay the sum of ______Two hundred______ and __00__/100 Dollars ($______200.00______) per seaso... later than June 1st for each window type air conditioner installed. The seasonal rate is subject to change after the initial term of this Lease. The unit shall not exce... 8,000 BTU and shall not draw more than 7.5 amps. Window frames shall not be altered for installation of the unit.

**Metering.** In the event a separate meter has been installed in the apartment to monitor Tenant's utility usage, including, but not limited to, lighting, heating, and air conditioning consumption, Tenant agrees to have all such service transferred to Tenant's name upon the earlier to occur of Tenant's occupancy or th... date which is two (2) business days after execution of this Lease. Tenant agrees to pay all such utility bills as they become due, including any deposits or installation charges which may be required.

**Service Interruption.** Landlord shall be under no liability to Tenant due to any discontinuance of heat, hot or cold water, air conditioning, elevator service, if such service is furnished, or for the discontinuance of any other service caused by accidents, breakage or strikes, or from any accident, or damage caused b... the handling of electric wires or lights, and that Landlord shall not be liable for loss or damage to property of Tenant caused by buffalo moths, termites, or other vermin, or by rain, snow, water or steam that may leak into or flow from any part of the building and/or the apartment through any defects in the roof or plumbing or from any other source, whatsoever, unless caused by the negligence of Landlord, its agents or employees. Tenant agrees to assume the responsibility of defending, at Tenant's expense, any claim which may be made against Landlord by any person claiming the right to be in the Apartment through or under Tenant, for any injury, loss or damage to person or property from any cause whatsoever, unless caused by negligence of Landlord, its agents or employees, in the event of which negligence, Landlord agrees to reimburse Tenant for any damages so sustained. TENANT WILL OBTAIN RENTER'S INSURANCE TO INDEMNIFY AGAINST PERSONAL LOSS OR LIABILITY.

8. **LATE CHARGE/FEES.** Tenant agrees to pay as additional rent a late charge of 5% of the monthly rent for any rent payment not received by the Landlord by the 5th of every month and a service fee of Twenty-five and No/100 Dollars ($25.00) for any check returned unpaid by Tenant's bank for any reason. Any check not cleared by Tenant's bank will be considered late and subject to the 5% late charge in addition to the service fee. Such late fee is not a waiver that the rent is due on or before the first of the month nor does it waive or limit Landlord's right to institute proceedings for rent or possession if the rent is not paid by the first of the month.

9. **RENT INCREASE.** a. After the initial term, or after the first year if the initial term is greater than one year, the monthly **RENT MAY BE INCREASED** by Landlord as provided by law. The Landlord shall give 30 days written notice to Tenant of the increase, which notice shall also expressly serve as one (1) full months notice to quit in the event the Tenant does not agree to pay the increase. Tenant shall accept Landlord's offer of the increased rent by remaining in possession of the apartment and/or the timely payment in full of the new rent specified in the notice. Upon timely payment of the increased rent, the notice to quit shall be void.

10. **PARKING.** In the event Landlord has provided on-site parking spaces, such spaces shall be used only by Tenant and if permitted, guests, on a first come, no reservation basis. Landlord reserves the right to make or revise rules or place limitations on the use of the spaces, including termination, at any time. If any employee of Landlord shall, at the request of Tenant or members of his household, move, handle, park or drive any automobile in the parking areas, then and in every case, such employee shall be deemed the agent of Tenant and Landlord shall not be liable for any loss, damage or expense that may be suffered in connection therewith. It is recommended that all parked cars be locked in the parking area. Any personal property which may be left in any automobile shall be at the sole risk of the parties owning the same, and Landlord shall in no event be liable for the loss, destruction, theft of or damage to such property or automobile, unless caused by or resulting from the negligence of Landlord. No washing or repairing of automobiles will be permitted in the parking areas. Automobiles must have current license tags and be in operating condition. Boats, campers, trailers, and commercial trucks and the like will not be permitted in the parking areas. Tenant and guests must observe all parking regulations as posted by Landlord and/or local authorities and agree to abide by same. Violation of any parking regulations will result in risk of the vehicle being towed away at the owner's expense.

11. **ADDITIONAL SERVICES.** The following additional services, if made available by Landlord, are provided at additional charge or as a convenience and not in consideration of payment of rent, on the following terms and conditions:

a. **Storage.** In the event the usage of a storage room is allowed by Landlord, **Tenant, AT HIS SOLE RISK** may use reasonable space, if available, without charge, in the storage room as an accommodation to Tenant for the storage of trunks, suitcases and other personal articles; provided, however, that Landlord shall not bear any liability for any loss or damage to any such items of personal property except as provided by law, and provided further that Landlord may discontinue such accommodation at any time. **Tenant AGREES TO REMOVE ALL SUCH PROPERTY STORED THEREIN ON FIVE (5) DAYS WRITTEN NOTICE AND DEMAND OF LANDLORD TO Tenant, FAILING WHICH LANDLORD MAY REMOVE THE SAME OR CAUSE THE SAME TO BE REMOVED TO A PUBLIC WAREHOUSE AT THE SOLE COST AND RISK OF Tenant.**

b. **Recreational Facilities.** In the event recreational facilities are provided, all persons using the recreational facilities do so at their own risk and sole responsibility unless resulting from the negligence of Landlord. Tenant shall abide by regulations governing use of the recreational facilities. Landlord reserves the right to close the recreational facilities at any time in its sole discretion.

12. **MOVE-OUT.** a. Tenant agrees not to vacate the apartment before the expiration of the initial term or any renewal term, without permission of Landlord and satisfaction of the written notice as required under this Lease. Tenant acknowledges and agrees that any possessions remaining in the apartment after a move-out are abandoned by Tenant, and Tenant agrees to pay the cost of removal and disposal of these possessions. Landlord may dispose of these items without notice or liability to Tenant.

b. Tenant shall leave the unit and all appliances clean and in good order. Tenant shall surrender all keys issued by Landlord and all duplicates of same. Failure to return the keys and all duplicates shall be sufficient cause for Landlord to replace locks and keys for the apartment at Tenant's expense. Tenant is hereby notified of Tenant's right to be present upon termination of the tenancy when Landlord or Landlord's agent inspects the apartment in order to determine if any damage was done to the apartment. Tenant must notify Landlord at least fifteen (15) days before Tenant's date of moving in writing of Tenant's intention to be present, Tenant's time of moving, and Tenant's new address. Landlord shall give ten (10) days notice to Tenant of the time and date when the apartment is to be inspected. The inspection shall occur either within three (3) days before or three (3) days after the date of Tenant's moving (excluding Saturdays, Sundays and holidays) of the termination of the tenancy.

c. Tenant agrees that during the period of two months prior to the expiration of a lease or any extension thereof, prospective tenants shall be admitted to the apartment for inspection at all reasonable hours. Landlord shall be able to bring prospective tenants in without Tenant being present.

d. If all Tenants are absent from the premises, without notice, **IN EXCESS OF TEN (10) CONSECUTIVE DAYS WHILE RENT IS DELINQUENT**, the premises will be considered abandoned and Landlord shall be entitled to immediate possession of the apartment unit in accordance with applicable law. Tenant will notify the Landlord in writing of any anticipated absence in excess of ten (10) days, no later than the first day of the absence.

13. **EARLY TERMINATION BY MILITARY PERSONNEL:** If Tenant is a member of the United States armed forces, or a member of the National Guard serving on full-time duty, and (i) receives orders for a permanent change of station more than a 35 mile radius from the Property, or (ii) is discharged and relieved from such active duty, or (iii) is ordered to report to government supplied quarters resulting in the forfeiture of basic allowance for quarters; then, Tenant may terminate this Lease by written notice to Landlord. The notice must state the effective date of the termination which shall be in no event less than 30 days after the date of the notice nor more than 60 days prior to the effective date of the departure necessary for Tenant to comply with the orders. Prior to termination, the Tenant shall furnish Landlord with a copy of the official notification of the orders or a signed letter confirming the orders from Tenant's commanding officer.

***All homes are shown and made available without respect to race, color, sex, religion, national origin, familial status or handicap.***

Revised 5/7/09

Initials: ___

## IMPORTANT - READ CAREFULLY

Tenant SPECIFICALLY acknowledges that he/she has carefully read all sections of this Lease, understands all of its terms, or has had the opportunity to have the terms of the Lease explained to him/her/them by Tenant's own independent advisor.

In Witness whereof, the parties, for themselves and their respective successors, executors, heirs and assigns, for good and valuable consideration have entered into this Apartment Lease on the date first set forth above.

WITNESS

ALDON MANAGEMENT CORP.

By: _____

Date: 5/15/19

TENANT:

Date: 5/15/09                    SS# ▓▓▓▓
                                 Tenant (Seal)

_____                SS# _____
Date: _____                  Tenant (Seal)

_____                SS# _____
Date: _____                  Tenant (Seal)

## ADDENDUM AND ADDITIONAL PROVISIONS attached hereto and made a part of this Lease:

1.      Lead Warning Statement.  Housing built before 1978 may contain lead-based paint.  Lead from paint, paint chips, and dust can pose health hazards if not taken care of properly.  Lead exposure is especially harmful to young children and pregnant women.  Before renting pre-1978 housing, landlords must disclose the presence of known lead-based paint and lead-based paint hazards in the dwelling.  Tenants must also receive a Federally approved pamphlet on lead poisoning prevention.

Initial ___ CB ___  Tenant has received the pamphlet Protect Your Family from Lead In Your Home.

Initial ___ CB ___  Landlord has provided the Tenant with all available records and reports pertaining to lead-based paint and/or lead-based hazards in the housing.

2.      Tenant acknowledges receipt form Landlord a copy of the following provisions of the Housing Regulations of the District of Columbia Chapter 1, Section 101 and 106 and Chapter 3.
Initial ___ CB ___

**EXHIBIT 1**

Apartment Lease Agreement at (Doreen) 5910, 14th St., NW, Apt. 303, Washington, D 20011

Occupants:  Constante P. Barot Dolores A Barot & Sofia  Barot

Sec.Dep.of $615.00Trans.Frm 1401WP-105 Dtd 6/8/01 +

# ALDON MANAGEMENT CORPORATION
## APARTMENT LEASE AGREEMENT

DISTRICT OF COLUMBIA

**1.** **LEASE.** Aldon Management Corp., 7900 Wisconsin Avenue, Suite 403, Bethesda, Maryland 20814, Agent for

N/A

_____, hereinafter designated "Landlord", in consideration of and subject to the terms, conditions and covenants set forth in this Lease does hereby lease to

**Constante P. Barot and Dolores A. Barot**

(collectively "Tenant"). Tenant hereby leases from Landlord, the dwelling unit known as Apartment No. **303** , located at

**5910 14th St., N.W. Washington, D.C. 20011**

to be occupied only as a private residence for those persons listed on the application and for no other persons except with the written approval of Landlord. Each Tenant listed above shall be jointly and severally responsible to the Landlord for full performance under each and every covenant and condition of this Lease and for compliance with applicable law.

**2.** **LEASE TERM.** This Lease shall be for a term of **Twelve** _____ months and _____ days, which term shall commence on the **1** day of **September** **2001** and shall terminate at Midnight on the **Last** _____ day of **August** **2002** . Notwithstanding the foregoing, if any payment by Tenant of the security deposit or initial installments of rent is dishonored by Tenant's bank, then this Lease shall be deemed void ab initio and Tenant shall be considered a trespasser and not a tenant.

After the initial term, this Lease RENEWS AUTOMATICALLY on a month to month basis and continues to renew each month unless a ONE MONTH written termination notice is given by either party. Tenant must deliver a ONE MONTH written notice to renew each month unless a ONE day of the month. This notice will be effective as of the first day of the next full month through the last day of the full month. Tenant agrees that Notice given by any Tenant is effective as to all Tenants. If Tenant, after having given effective notice of their intention to vacate, fails to timely surrender possession, Tenant shall be liable for rent at double the rent during the holdover period.

Landlord is not responsible for damages if Landlord is unable to give Tenant possession of the apartment at the start of this lease. The move-in date will be postponed until the apartment becomes available for occupancy by Tenant. Rent, however, will only be charged from the date on which possession of the apartment is made available to Tenant. If Landlord cannot give possession within 60 days after the first day of the initial term stated above, Landlord or Tenant may cancel this lease by delivery of written notice to the other.

**3.** **RENT.** a. The total rent for the apartment for the initial term of this Lease shall be **$8,580.00** payable in equal monthly installments of **$715.00** , the first installment payable upon execution of this Lease, and each remaining installment payable in advance, without setoff, deduction or demand, before the first (1st) day of each month to and at the offices of Aldon Management Corp., 7900 Wisconsin Avenue, Suite 403, Bethesda, MD 20814, or assigns. In the event this Lease commences on a date other than the first day of the month, the first installment shall include an amount equal to the monthly installment pro-rated for the number of days the apartment is to be occupied before the first full month of the term. Tenant shall take possession on _____

_____ to _____ and pay _____ as rent for the period

b. Parking. In the event Landlord provides on-site parking privileges, Tenant shall pay additional rent of **$0.00**

per month. Payment of Parking Rental required for ____ spaces: YES ____ NO ____.

Payment of parking rent does not guarantee use of a parking space, which is made available on a first come basis.

**4.** **OCCUPANCY.** Tenant covenants that they shall use and occupy the apartment only as a residential dwelling and private residence and Initial: ____

for no other purpose whatsoever, by the following named individuals and no others:

**Constante P. Barot, Dolores A. Barot and Sofia Barot**

If there is any change in the foregoing named occupants, such change must be approved in advance in writing by Landlord by paying an administrative review fee of $50.00 and following the same application procedure and meeting the same criteria as other prospective tenants (except for afterborn children). Landlord reserves the right to uniformly and impartially regulate the maximum number of occupants permitted to reside within this size dwelling unit. The maximum number of occupants for this unit is **3** . Exceeding the permitted number of residents shall be a material breach of the Lease. Guests visiting Tenant may not reside in the apartment for more than FOURTEEN DAYS during any calendar year, unless written permission is first secured from Landlord. Tenant's guests shall abide by all applicable covenants and rules herein contained, so that a breach by a guest or visitor shall be treated as a breach by Tenant himself. Tenant shall not accept any boarders, roomers or live-ins. Tenant shall not carry on any babysitting or day care service, trade, profession, business, school, course of instruction or entertainment or teach instrumental or vocal music, dramatics, gymnastics, dancing or the like in the apartment.

**5.** **SECURITY DEPOSIT.** a. Receipt: Landlord acknowledges that Tenant has deposited with Landlord a security deposit in the amount of **$715.00** , which security deposit does not exceed one (1) month's rent, as security for Tenants' obligations and performance under the Lease. Landlord shall deposit the security deposit in an interest bearing escrow account in a federally insured bank or savings institution within the District of Columbia in accordance with law. Landlord will post the prevailing passbook interest rate for each six month period on January 1 and July 1 of each year. Security deposit paid by: **Constante P. Barot**

b. Deductions during term of Lease: Landlord shall be authorized to deduct from the security deposit from the accrued rent plus any late charges or bad check fees or any damages incurred by _____

2.   **LEASE TERM.** This Lease shall be for a term of _____ Twelve _____ months and _____

commence on the _____ 1 _____ day of _____ September _____ 2001 _____ and shall terminate at Midnight on the _____ Last

_____ August _____ 2002 _____. Notwithstanding the foregoing, if any payment by Tenant of the security deposit or initial installment of rent

is dishonored by Tenant's bank, then this Lease shall be deemed void ab initio and Tenant shall be considered a trespasser and not a tenant.

After the initial term, this Lease RENEWS AUTOMATICALLY on a month to month basis and continues to renew each month unless a ONE MONTH written termination notice is given by either party. Tenant must deliver a ONE MONTH written notice of their intention to vacate on or before the last day of the month. This notice will be effective as of the first day of the next full month through the last day of the full month. Tenant agrees that Notice given by any Tenant is effective as to all Tenants. If Tenant, after having given effective notice of their intention to vacate, fails to timely surrender possession, Tenant shall be liable for rent at double the rent during the holdover period.

Landlord is not responsible for damages if Landlord is unable to give Tenant possession of the apartment at the start of this lease. The move-in date will be postponed until the apartment becomes available for occupancy by Tenant. Rent, however, will only be charged from the date on which possession of the apartment is made available to Tenant. If Landlord cannot give possession within 60 days after the first day of the initial term stated above, Landlord or Tenant may cancel this lease by delivery of written notice to the other.

3.   **RENT.**   a. The total rent for the apartment for the initial term of this Lease shall be _____ **$8,580.00**

payable in equal monthly installments of _____ **$715.00** _____, the first installment payable upon execution of this Lease, and each remaining installment payable in advance, without setoff, deduction or demand, before the first (1st) day of each month to and at the offices of Aldon Management Corp., 7900 Wisconsin Avenue, Suite 403, Bethesda, MD 20814, or assigns. In the event this Lease commences on a date other than the first day of the month, the first installment shall include an amount equal to the monthly installment pro-rated for the number of days the apartment is to be occupied before the first full month of the term. Tenant shall take possession on _____ and pay _____

_____ to _____ as rent for the period

   b. Parking. In the event Landlord provides on-site parking privileges, Tenant shall pay additional rent of _____ **$0.00**

per month. Payment of Parking Rental required for _____ spaces: YES _____ NO _____.

Payment of parking rent does not guarantee use of a parking space, which is made available on a first come basis.   Initial: _____

4.   **OCCUPANCY.** Tenant covenants that they shall use and occupy the apartment only as a residential dwelling and private residence and for no other purpose whatsoever, by the following named individuals and no others:

   **Constante P. Barot, Dolores A. Barot and Sofia Barot**

If there is any change in the foregoing named occupants, such change must be approved in advance in writing by Landlord by paying an administrative fee of $50.00 and following the same application procedures and meeting the same criteria as other prospective Tenants/applicants for admission thereto. Landlord reserves the right to uniformly and impartially regulate the maximum number of occupants permitted to reside within this one dwelling unit. The permitted number of occupants for this unit is _____ 3 _____. Exceeding the permitted number of residents shall be a material breach of the Lease. Guests visiting Tenant may not reside in the apartment for more than FOURTEEN DAYS during any calendar year, unless written permission is first secured from Landlord. Tenant's guests shall abide by all applicable covenants and rules herein contained, so that a breach by a guest or visitor shall be treated as a breach by Tenant himself. Tenant shall not accept any boarders, roomers or live-ins. Tenant shall not carry on any babysitting or day care service, trade, profession, business, school, course of instruction or entertainment or teach instrumental or vocal music, dramatics, gymnastics, dancing or the like in the apartment.

5.   **SECURITY DEPOSIT.**   a. Receipt: Landlord acknowledges that Tenant has deposited with Landlord a security deposit in the amount of _____ **$715.00** _____, which security deposit does not exceed one (1) month's rent, as security for Tenants' obligations and performance under the Lease. Landlord shall deposit the security deposit in the District of Columbia in accordance with law. Landlord will post the prevailing passbook interest rate for each six month period on January 1 and July 1 of each year. Security deposit paid by: _____ **Constante P. Barot**

   b. Deductions during term of Lease: Landlord shall be authorized to deduct from the security deposit, from time to time, payments for accrued rent plus any late charges or bad check fees or any damages incurred by reason of any non-compliance by Tenant with any provision of the Lease. This section does not preclude the Landlord or Tenant from recovering other damages to which they may be entitled under this Lease or at law.

   c. Return of Security Deposit: The Landlord shall return the security deposit paid by the Tenant, and any interest due the Tenant on that deposit, less any damages rightfully withheld in accordance with D.C. law. It is understood and agreed that the security deposit, or any portion thereof, may be withheld for damages incurred by the premises caused by Tenant, Tenant's family, agents, employees, or social guests in excess of ordinary wear and tear. Landlord may also withhold for damages incurred by Landlord as a result of Tenant's failure to fully and faithfully comply with and observe all of the terms, covenants, and conditions of this Agreement, lost future rents and unpaid rent or other charges, including unpaid utilities. In such circumstances, the Landlord shall notify Tenant in writing, to be delivered to the Tenant personally, or by certified mail at the Tenant's last known address, within forty-five (45) days of the termination of tenancy, of the Landlord's intention to withhold or apply the monies toward defraying the cost of expenses. The Landlord, within thirty (30) days after notification to the Tenant of the intention to withhold, shall tender a refund of the balance of the deposit or payment, including interest, not used to defray such expenses, and at the same time give the Tenant an itemized statement of the repairs and other uses to which the monies were applied and the cost of each repair or other use. In the event Tenant is evicted for non-payment of rent or for breach of a condition or covenant of this Lease prior to termination of the tenancy, or in the event Tenant has abandoned the apartment prior to termination of the tenancy, then: (I) within forty-five (45) days of being evicted or abandoning the apartment, Tenant must first demand return of the security deposit by giving to Landlord written notice by first class mail (notice

*All homes are shown and made available without respect to race, color, sex, religion, national origin, familial status or handicap.*

lease currently in use.wpd

Initials: CB / DB
Page 1 of 7

In Witness whereof, the parties, for themselves and their respective successors, executors, heirs and assigns, for good and valuable consideration have entered into this Apartment Lease on the date first set forth above.

WITNESS

ALDON MANAGEMENT CORP.

By: _____

Date: 8/24/01

TENANT:

Date: 8/22-01          SS# _____ Tenant (Seal)

Date: 8-22-01          SS# _____ Tenant (Seal)

Date: _____          SS# _____ Tenant (Seal)

# ADDENDUM AND ADDITIONAL PROVISIONS attached hereto and made a part of this Lease:

1.     Lead Warning Statement. Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not taken care of properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, landlords must disclose the presence of known lead-based paint and lead-based paint hazards in the dwelling. Tenants must also receive a Federally approved pamphlet on lead poisoning prevention.

Initial: _____  Tenant has received the pamphlet Protect Your Family from Lead in Your Home.

Initial: _____  Landlord has provided the Tenant with all available records and reports pertaining to lead-based paint and/or lead-based hazards in the housing.

... provisions of the Housing Regulations of the District of Columbia Chapter 1.



FAMILY OWNED AND OPERATED SINCE 1947.

April 7, 2015

Constante Barot
Delores Barot
Sofia Barot
Amon Holmes

6707 14th St NW #A
Washington, DC 20012

To Whom It May Concern:

This letter will serve as written verification that Constante Barot, Delores Barot, Sofia Barot, and Amon Holmes are currently residents at 6707 14th St NW #A since June 01, 2009 until present.

If you have any questions, please feel free to contact our Management office at 202-726-0174 ext. 4414.

Sincerely,

Pat Perkins
Pat Perkins
Property Manager.

**EXHIBIT 5**

**Aldon Management Corp. (AMC)**

**April 25, 2017 – Spring 2017 Unit Inspection and Preventive Maintenance**

**6707, 14th St., NW Apt A, Washington, DC 20012**

**DC  Tenant Bill of Rights No. 9 QUIET ENJOYMENT AND  RETALIATION(DC Official Code 42-3505.2**

**" x x x  x x x violating your privacy, x x x x x xx "**



FAMILY OWNED SINCE 1947.

## NOTICE TO RESIDENTS 6707 14th Street

### Spring 2017 Unit Inspections and Preventative Maintenance

#### Friday, April 21, 2017, 9AM to 4PM

#### Inspections will be performed on the 3rd & units #201 - #206

#### Tuesday, April 25, 2017, 9AM to 4PM

#### Inspections will be performed on units #207 - #210, the 1st Floor & the Basement (A) Level

#### (**Missed Apartments will be inspected Thursday, April 27, 2017**)

The Maintenance Staff will enter your apartment to check the following:

**A/C Units-** Cleaning filters, convector coils and checking the areas surrounding window units

**Bathroom-** Checking for leaks in sink and tub faucets, showerheads, window sills, toilets, under the vanity, checking the toilet and sink supply valves, replacing the sink aerators and checking the toilet flappers and fill valves

**Kitchen-** Checking for leaks in faucets and under cabinets, checking all appliances for operation, replacing sink aerators and checking for holes behind the appliances

**All areas-** Checking all walls, floors, doors, knobs, windows, frames, screens, electrical switches, smoke detectors and outlets

This year, we will be checking the areas under the kitchen sink, as well as compromised areas in the closets. Please make sure to remove any items that are located in the bottom of the closets and cabinet under kitchen sink so that the closet floor and the inside of the cabinet can be clearly viewed.

If you are having a maintenance problem in your apartment, please contact the rental office, or submit your maintenance request on the resident portal at www.aldonmanagement.com

Please provide easy access the areas where maintenance will take place, and please make any necessary provisions for your pets.

We thank you in advance for your continued cooperation and understanding and please do not hesitate to contact us at (202) 726-0174 if you have any questions or concerns.

**Aldon Management Corp.**

1400 Aspen Street, NW, Suite B • Washington, DC 20012 • 202.726.0174 • Fax: 202-726-0051. 

Note: No where in this notice mention that photos
                                    #5

9. *QUIET ENJOYMENT AND RETALIATION:* The landlord may not unreasonably interfere with the tenant's comfort, safety or enjoyment of a rental unit, whether for the purpose of causing the housing accommodation to become vacant or otherwise (D.C. Official Code § 42-3402.10). The landlord may not retaliate against you for exercising any right of tenancy. Retaliation includes unlawfully seeking to recover possession of your unit, to increase the rent, to decrease services or increase your obligations; and also includes violating your privacy, harassing you, or refusing to honor your lease. (D.C. Official Code § 42-3505.02)

10. *DISCRIMINATION:* The landlord may not engage in discriminatory acts based upon the actual or perceived: race, color, religion, national origin, sex, age, marital status, genetic information, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities, disability, matriculation, political affiliation, source of income, status as a victim of an intra-family offense, or place of residence or business of any individual. Discriminatory acts include refusing to rent; renting on unfavorable terms, conditions, or privileges; creating a hostile living environment; and refusing ·to make reasonable accommodations to give a person an equal opportunity to use and enjoy the premises. (D.C. Official Code § 2-1401.01 et seq.)

11. *RIGHT TO ORGANIZE:* The landlord may not interfere with the right of tenants to organize a tenant association, convene meetings. distribute literature, post information. and provide building access to an outside tenant organizer. (D.C. Official Code § 42-3505.06)

12. *SALE AND CONVERSION:* Tenants must be given the opportunity to purchase an accommodation before the landlord sells or demolishes the accommodation or discontinues the housing use. The landlord may not convert the rental accommodation to a cooperative or condominium unless a majority of the tenants votes for the conversion in a tenant election certified by the District's Conversion and Sale Administrator. (D.C. Official Code §§ 42-3404.02 & 42-3402.02)

13. *RELOCATION ASSISTANCE:* If you are displaced by alterations or renovations, substantial rehabilitation. demolition. or the discontinuance of the housing use, you may have the right to receive relocation assistance from your landlord. (D.C. Official Code § 42-3507.01)

4. *EVICTION:* The landlord may evict you only for one of ten specific reasons set forth in Title V of the Rental Housing Act of 1985. For example, you may *not* be evicted just because your lease term expires, or because the rental property has been sold or foreclosed upon. Even if there is a valid basis to evict you. the landlord may not use "self-help" methods to do so, such as cutting off your utilities or changing the locks. Rather, the landlord must go through the judicial process. You generally must be given a written Notice to Vacate (an exception is non-payment of rent where you waive the right to notice in the lease); an opportunity to cure the lease violation, if that is the basis for the action; and an opportunity to challenge the landlord's claims in court. Finally. any eviction must be pursuant to a court order. and must be scheduled and supervised by the U.S. Marshal Service. (D.C. Official Code § 42-3505.01)

EXHIBIT 6

**Dolores A. Barot's fax dated  April 25, 2017 —  complaining re: Invasion of  Privacy**

FAX No. 301 913 0357

To: Ms. Maria Rico
    Vice President
    Aldon Management

From: Dolores A. Barot\ ⸺ ⸺ ⸺ ⸺ ⸺ ⸺ ⸺ ⸺ ⸺ ⸺ ⸺
      6707, 14th St. Apt. A

Date: April 25, 2017

Subject. Invasion of Privacy

Message:

Dear Ms Rico

This is to personally complain regarding the taking of pictures in our Apartment by the Manager Ms.
Daria Simpson, on this date in connection with the Spring 2017 Unit Inspection and Preventive
Maintenance.

As far as I know, she is not allowed to take picture unless there is a Court Order.

What she did : ⸺ OUR PRIVACY has been INVADED.

I even askekd her if she is allowed to take pictures, while doing the act, but she ignored me.

We have problems in our Apartment building, the Entrnace Door Lock is not working thus every tenant
in this building is not safe. Tenants had been complaining about this.

I hope the Manager would attend to a much important matter that concerns every tenant.

For your attention and action.

Respectfully yours,

*DlaBarot*

Dolores A. Barot

cc: Ms.Daria Simpson
    Manager
    Aldon Management, Aspen Group

# 6



**EXHIBIT 7**

**Maria Rico (AMC's Vice President)  letter  dated  April 26, 2017 for re-inspection of our Apartment for May 3, 2017**



**ALDON**
**MANAGEMENT CORP.**

FAMILY OWNED SINCE 1947.

April 26, 2017

<u>Via Hand Delivery</u>
Constante Barot
Dolores Barot
6707 14th Street, N.W. #A
Washington, DC 20012

I am in receipt of two letters dated April 25th and April 26th regarding access to the above-referenced apartment. Please note that Landlord provided ample notice, as required, to Resident with respect to accessing the unit for purposes of the bi-Annual Walk Thrus/Preventative Maintenance. More specifically, Resident was notified of the requirement to clear closets in order for Landlord to thoroughly inspect and perform required maintenance. Please refer to your lease, Paragraph 18 entitled Access to Apartment. Failure to comply with Landlord request is a lease violation.

Your request for an extension in order to clear the closets has been reviewed. The apartment will be re-inspected Wednesday, May 3, 2017. At that time, the apartment must be ready for Landlord to complete the Walk Thru and Preventative Maintenance. Any lease violations, including housekeeping issues will be addressed upon successful completion of the Walk Thru and Preventative Maintenance.

Aldon Management follows Fair Housing and the Housing Regulations of the District of Columbia. Landlord's responsibility to maintain the premises should not be interpreted as harassment, an invasion of privacy nor retaliation. Your full cooperation is appreciated.

Sincerely,

*Maria Rico*

Maria Rico
Vice President
Aldon Management Corp.



**EXHIBIT 8**

**Aldon Management Corp. (AMC's)**

**OCCUPANCYSTANDARDS**

**Income Qualification:** The **Minimum** income requirement to qualify for one of our apartment homes is 35 times the monthly rent in a year. This is based in a combine monthly household income. Example: if the monthly rent in an apartment is $1,000.00   minimum income must be at least $35,000.00 in order to income qualify for the apartment. ($1,000.00 x 35 = $35,000.)

**Roommates:**   Each person must complete an application and will jointly qualify for the apartment.  Each leaseholder is fully responsible for the entire rental payment, and each must execute the Lease Agreement and all related documentation.

**Occupancy Standards:** Following are the maximum occupancy guidelines for our rental properties:

|  | Maryland | District of Columbia |
|---|---|---|
| Efficiency/studio | 2 people | 1 adult & 1 child |
| 1 bedroom | 2 people | 2 adults & 1 child |
| 2 bedroom | 4 people | 4 adults & 1 child |
| 3 bedroom | 6 people | 6 adults & 1 child |

All occupants must be identified on the application and be named as authorized occupants on the lease agreement.

**Evaluation:**  As a means of evaluating all applicants in a fair and consistent manner Aldon Management utilizes the services of a third party rental scoring system that weighs the indicators of future rent payment performance.  The rental score is based on statistical analysis of prior renters' indicators and subsequent payment performance.  The score considers factors such as previous rental history, credit report, employment, income and criminal background.  Based on the score, we may choose to accept or reject an applicant, or seek additional requirements for approving the lease.  These requirements may include, but are not limited to, additional documentation of income or employment or an additional deposit such as the first month's rent.
If an application is denied or approved with conditions, the applicant will be given the name, address, phone number of the appropriate reporting agency.  You are encouraged to obtain a copy of your credit, Registry or criminal report and correct any erroneous information that might be on the report. We do not have access to the content of your credit or criminal report and we are not authorized to discuss these reports with you.

Once your application is approved, we will schedule an appointment with you to sign your lease in person; you can opt to do the lease signing electronically.  All parties will be expected to sign the lease agreement within five days of application approval.
At lease signing you will need:
    A check for the balance due for your security deposit. The standard deposit is $500, however if approved with conditions you will be required to pay one month's rent. This check must be from the same applicant that paid the $200 Holding Deposit.
    Renters insurance declaration page with minimum liability of $100,000 and Aldon Management listed as "additional interested party".
    *Pet documents and pet deposit as applicable.

On your move in date when you come to pick up the keys to your new apartment home you will be required to bring your rent check.

Thank you for selecting an Aldon community as your new home, we're sure you'll be pleased!

EXHIBIT 9

FEDERAL FAIR HOUSING ACT

Creates unreasonable restrictions on the number of people that may live in the rental unit

Creates different terms or standards for certain tenants

DRAFT

Download article as a PDF

housing discrimination

The federal Fair Housing Act, the Fair Housing Amendment Acts (42 U.S. Code 3601-3619, 3631), and many state and local laws prohibit a landlord from selecting tenants based on certain protected criteria. A landlord may not refuse to rent to a tenant for the following reasons:

- Race or color
- National origin
- Religion
- Disability or handicap, including physical and mental impairment
- Sex, including sexual harassment
- Familial status (includes protection for people with children under age 18 or pregnant women)

In addition, state and local housing discrimination laws may offer coverage beyond federal law, such as protection for sexual orientation, age, and marital status.

### What kind of housing discrimination do the federal Fair Housing Acts prohibit?

A landlord must treat every tenant equally. Illegal discrimination occurs when the landlord:

- Refuses to rent to members of a certain race
- Denies the availability of a available rental dwelling or steers renters to a certain area based on race
- Creates unreasonable restrictions on the number of people that may live in the rental unit
- Includes preferences or limitations in a rental advertisement
- Creates different terms or standards for certain tenants
- Terminates a tenancy based on a discriminatory reason
- Provides services or facilities only for certain tenants
- Demands sexual favors or creates a sexually hostile environment
- Refuses to make reasonable accommodations for a disabled tenant
- Fails to stop another tenant from making discriminatory, harassing, or threatening comments to a person in a protected category

The Fair Housing Acts apply to any person that deals with tenants and prospective tenants, including real estate agents, property owners, landlords, and managers. Even if the property owner did not personally discriminate against tenants or prospective tenants, the landlord may still be liable for the civil rights violations of employees.

### What property is exempt from the federal Fair Housing Acts?

# EXHIBIT 10

## FAIR HOUSING LAW IN THE DISTRICT

Provide DIFFERENT HOUSING UNITS or services because of particular traits

Establish different terms or conditions because of their traits

# Fair Housing Law in the District
*Know Your Rights in the District of Columbia*



## DC Human Rights Act

In accordance with the District of Columbia Human Rights Act of 1977, as amended, the District of Columbia and housing providers cannot discriminate on the basis of (actual or perceived):

- Race
- Color
- Sex (including pregnancy)
- National Origin
- Religion
- Age
- Marital Status

- Personal Appearance
- Sexual Orientation
- Gender Identity or Expression
- Familial Status
- Family Responsibilities
- Matriculation
- Political Affiliation

- Disability
- Source of Income
- Victim of an Intra-Family Offense
- Place of Residence or Business

*Sexual harassment is a form of sex discrimination which is prohibited by the Act. In addition, harassment based on any of the above categories is also prohibited by the Act.*

It is unlawful for any person to practice discrimination in the rental or sale of housing accommodations and commercial space in the District of Columbia on the basis of the above categories.

Similar prohibitions apply to "blockbusting," "steering," and financing.

## Examples of Illegal Discrimination

In the District, it is illegal to:

- Refuse housing to someone because of one of the traits;
- Make housing unavailable to any person because of their traits;
- Advertise a preference or dislike for a group because of their traits;
- Falsely tell someone housing is unavailable because of their traits;
- Establish different terms or conditions because of their traits;
- Provide different housing, units or services (such as repairs) because of particular traits;
- Urge someone to move to a specific area because of their traits;
- Persuade owners to sell because people of a particular traits are moving into the neighborhood;
- Refuse to make a loan because of a person's traits;
- Provide inaccurate or different information depending on the traits; or
- Retaliate against someone for filing a complaint or acting as a witness.

---

### Filing a Complaint of a Violation

To file a complaint about a violation of these laws with the Office of Human Rights, visit:
- **Online** at ohr.dc.gov; or
- In-Person at 441 4th Street NW, Suite 570N, Washington, DC 20001.

Questions can also be answered by phone at (202) 727-4559.

---



**Office of Human Rights**
DISTRICT OF COLUMBIA    ohr.dc.gov    phone: (202) 727-4559    fax: (202) 727-9589    441 4th Street NW, Suite 570N, Washington, DC 20010

**EXHIBIT 11**

**Dolores A. Barot's fax  dated May 9, 2017 explaining why they DID NOT SIGN the New Lease Contract**

May 9, 2017

To: Daria Simpson
FAX No. 202 726 0051

MESSAGE:

Dear Ms. Simpson

Yesterday, May 8, 2017 we did not sign the New Lease Contract because it only listed
myself and my husband, excluding Sofia and Amon Holmes as occupants. My son
Omar said that he hasn't received yet the Letter that you allegedly mailed a week ago.

Why are you in a rush to have a new Lease Contract without the names of Sofia nor
Amon? Sofia was just assigned outside of DC but now she's back. Can my 5-year old
grandson Xander no longer stay in our Apartment where he grows?

Aldon Management defrauded us and the DC Government. We were illegally
discriminated. My husband's counterpart were housed in a REAL two bedroom
apartments. We were housed in an ILLEGALLY IN LAW UNIT/APARTMENT. Your
Office Record (thru Ms Rico's own words) showed that our Unit, the 6707, 14th Street
Apt. A Washington DC 20012 is one bedroom apartment yet because my husband is just
a Maintenance Helper and we are Asian, you have us live/pay rent in this Unit without
disclosing that it is illegal all the time that we are living here.

For your information.

Respectfully yours,

*Dolores A. Barot*
Dolores A. Barot

cc: Maria Rico – FAX No. 301 913 0357
    Aldon Management
        Tenant Advocate   —   Fax # 202-719-6585

#14

EXHIBIT 12

**Letter of Michele C. Mainers, AMC's Attorney dated  May 5, 2017 and received by Dolores A. Barot on May 10, 2017 that reads:  "NOTICE TO CORRECT OR VACATE"**

**DC TENANT BILL OF RIGHTS NO. 9 – QUIET ENJOYMENT AND RETALIATION – "xxxxx harassing you x x x x x x**

# THE MEINERS LAW FIRM, PLLC

MICHELE C. MEINERS
ADMITTED IN DC, MD AND VA

May 5, 2017

Constante Barot
6707 14th Street NW, #A
Washington, D.C. 20012

Re:     **NOTICE TO CORRECT OR VACATE**

Dear Tenants:

This notice is being sent to you pursuant to Section 501 (b) of the District of Columbia Rental Housing Act of 1985, D.C. Law 6-10. Section 501 (b), provides that a housing provider may recover possession of a rental unit where the tenant is violating an obligation of tenancy and fails to correct the violation within thirty (30) days after receiving from the housing provider a notice to correct or vacate. You are hereby informed that you have been violating the obligations of your lease for the premises. Your violations of your lease consist of the following:

> You have failed to maintain your unit in a clean and sanitary manner. The apartment is overly cluttered, creating unsafe conditions. This is your second violation of the lease for uncleanliness and excessive clutter. You received a letter for a similar violation in September 2016. This conduct violates your obligations under your Lease under Paragraph 19.

In order to cure this violation, you must clean your apartment, remove excessive clutter, and obtain a satisfactory inspection report from your landlord. If you fail to do so, you are hereby notified that the housing provider desires to have and gain possession of the premises occupied by you, and set forth above, no later than midnight on the thirtieth day after service of this notice. In the event you fail to vacate the premises as aforesaid, it will be necessary that the housing provider that such steps as are appropriate to secure possession of the premises.

Nothing herein shall be deemed to relieve you of your obligation to promptly pay all future rent when due, or prevent management from suing for possession based upon non-payment of rent. Your monthly rental rate may increase as a result of your noncompliance and you will be responsible for the higher rental rate until and unless you either comply with this notice or vacate the premises. You are also notified that the rent for the premises is due in accordance with your lease, up to and including the date by which you are required to Quit and Vacate pursuant to the terms thereof. Also, you will be liable for payment of rent for the use and occupancy of the premises if you fail to vacate by the date specified in this notice. This notice shall not relieve you from any claims for any other damages which may arise out of the lease.

Rec'd: May 10, 2017    *Barot*

This property is registered with the Rental Accommodations and Conversion Division. The housing provider's Registration Number is 71102770. A copy of this letter has been filed with the Rental Accommodations and Conversion Division on this same date. If you have any questions, please direct them to the Rental Accommodations Division in writing at 1100 4th Street, SW, Washington, DC 20024 or call (202) 442-4400, Monday-Friday from 8:30am-4:30pm. You can also visit the Housing Resource Center Monday-Friday from 8:30am-3:30pm.

Sincerely,

/s/ Michele C. Meiners
Attorney for Aldon Management Corp.

cc (by hand):   Rental Accommodations and Conversion Division

9. *QUIET ENJOYMENT AND RETALIATION*: The landlord may not unreasonably interfere with the tenant's comfort, safety or enjoyment of a rental unit, whether for the purpose of causing the housing accommodation to become vacant or otherwise (D.C. Official Code § 42-3402.10). The landlord may not retaliate against you for exercising any right of tenancy. Retaliation includes unlawfully seeking to recover possession of your unit, to increase the rent, to decrease services or increase your obligations; and also includes violating your privacy, harassing you, or refusing to honor your lease. (D.C. Official Code § 42-3505.02)

10. *DISCRIMINATION*: The landlord may not engage in discriminatory acts based upon the actual or perceived: race, color, religion, national origin, sex, age, marital status, genetic information, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities, disability, matriculation, political affiliation, source of income, status as a victim of an intra-family offense, or place of residence or business of any individual. Discriminatory acts include refusing to rent; renting on unfavorable terms, conditions, or privileges; creating a hostile living environment; and refusing to make reasonable accommodations to give a person an equal opportunity to use and enjoy the premises. (D.C. Official Code § 2-1401.01 *et seq.*)

11. *RIGHT TO ORGANIZE*: The landlord may not interfere with the right of tenants to organize a tenant association, convene meetings, distribute literature, post information, and provide building access to an outside tenant organizer. (D.C. Official Code § 42-3505.06)

12. *SALE AND CONVERSION*: Tenants must be given the opportunity to purchase an accommodation before the landlord sells or demolishes the accommodation or discontinues the housing use. The landlord may not convert the rental accommodation to a cooperative or condominium unless a majority of the tenants votes for the conversion in a tenant election certified by the District's Conversion and Sale Administrator. (D.C. Official Code §§ 42-3404.02 & 42-3402.02)

13. *RELOCATION ASSISTANCE*: If you are displaced by alterations or renovations, substantial rehabilitation, demolition, or the discontinuance of the housing use, you may have the right to receive relocation assistance from your landlord. (D.C. Official Code § 42-3507.01)

14. *EVICTION*: The landlord may evict you only for one of ten specific reasons set forth in Title V of the Rental Housing Act of 1985. For example, you may *not* be evicted just because your lease term expires, or because the rental property has been sold or foreclosed upon. Even if there is a valid basis to evict you, the landlord may not use "self-help" methods to do so, such as cutting off your utilities or changing the locks. Rather, the landlord must go through the judicial process. You generally must be given a written Notice to Vacate (an exception is non-payment of rent where you waive the right to notice in the lease); an opportunity to cure the lease violation, if that is the basis for the action; and an opportunity to challenge the landlord's claims in court. Finally, any eviction must be pursuant to a court order, and must be scheduled and supervised by the U.S. Marshal Service. (D.C. Official Code § 42-3505.01)

**EXHIBIT 13**

**Dolores A. Barot's Letter dated May 10,  2017, contradicting the Letter of Michele C. Mainers, AMC's Attorney dated  May 5, 2017**

To: Daria Simpson
FAX No. 202 726 0051
May 10, 2017

MESSAGE:

Dear Ms. Simpson

This is in receipt of your Notice dated May 5, 2017 received this date from Aldon's Lawyer, Michelle C. Meiners to Correct or Vacate .

I vehemently object that we received a Letter in September 2016 for any violation. When Ms Rico told me on May 3, 2017 about this Letter, I told her that we did not receive any Notice and give us a receipted copy, she failed . What is clear is that our human rights are violated and we have been discriminated. (My husband's counterpart were housed in a REAL two bedroom apartments.  We were housed in an ILLEGAL IN LAW UNIT/APARTMENT.  Your Office Record  (thru Ms Rico's, own words (Aldon's Vice President) showed that our Unit, the 6707, 14th Street Apt. A Washington DC 20012 is one bedroom apartment..

What is also clear is that on May 8, 2017, when we refused to sign a new Lease Contract that only list myself and my husband **to show that our Unit is only one bedroom based on the number of occupants** and when we said that we need a copy to review it before signing, we were told that we can only be given a copy if "we signed it" is harassment.  You keep on finding faults as an "scape goat" for your "wrong-doings"

I cannot accept that our unit is "unclean and unsanitary"  Our grandson Xander (now 5 year old) who was borned prematurely live in this Unit and grew up healthy.


Respectfully yours,

Dolores A. Barot

cc: Maria Rico – FAX No. 301 913 0357

   Michelle C. Meiners - Fax 703-522-8108


Scan 81                                                    # 16

**EXHIBIT 14**

**Department of Consumer and Regulatory Affairs (DCRA) Inspection Report that reads:**

**"xxxxx bedroom #2 does have one window which does not meet today's building code requirement for egress". xxxx x x x x**

**DC TENANT BILL OF RIGHTS NO. 6 – (Building Conditions ) x x x x x *warrant of habitability"***

# RE: 6707 14th St NW - Apt. A

Monday, November 6, 2017 1:17 PM

SUBMIT

SUBMIT

From: ``
    "Legaspi Ruben (DCRA)" <ruben.legaspi@dc.gov>
To:
    "DOLORES BAROT" <dolores_barot@yahoo.com>

Raw Message Printable View

- 6 Files
- 26 MB
- Download All

- DOC Inspection Report.doc 66KB Save JPG5 MB
  Save JPG 5 MB Save JPG 5 MB Save JPG  MB
  Save JPG  MB Save

Hello Ms. Barot,

Attached is the inspection report from the inspection of Apt. A and also some of the photos.

Regards,

Ruben Legaspi

Combo Code Compliance Specialist II

Office of Inspections and Compliance Administration

Department of Consumer and Regulatory Affairs

1100 4th Street, SW

Washington, DC 20024

Office: 202-741-7736

Email:Ruben.Legaspi@dc.gov

Website:www.dcra.dc.gov



DEPARTMENT OF CONSUMER & REGULATORY AFFAIRS

**Department of Consumer and Regulatory Affairs**
**Inspection and Compliance Administration**
1100 4th St SW, Washington, DC 20024

## Inspection Report

| Property Address & Unit Number | 6707 14th St NW |
|---|---|
| Customer | |
| Site Representative | |
| Inspector name | Ruben Legaspi |
| Date & Time of inspection | 5/24/17      3:45pm |
| CAP id # / Permit # | CIC1701438 |

Inspection Type: (Check below or list)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ Building | ☐ Int. Demo | ☐ Part. Demo | ☐ Raze | ☐ Sign | ☐ Projection | ☐ Pub. Space |
| ☐ Specialty | ☐ Misc. | ☐ Suppl. | ☐ Elec. | ☐ Mech. | ☐ Plumb. | ☐ Gas |
| X Illegal Const. | ☐ Const Compl. | ☐ Fire | ☐ Zoning | ☐ Elevator | ☐ Boiler | ☐ Prop Maint. |

| Item # | Description |
|---|---|
| | -The inspection was set up by scheduling due to a complaint of "new apt in basement no |
| | permits please call Ms. Deloris @202-286-6522 before going to unit she will open door for you". |
| | |
| | Met with complainant who showed me a bedroom which she is claiming was built illegally over |
| | 16 years ago. She is claiming that one of the bedrooms was once part of an existing laundry |
| | room. The unit is a two bedroom unit. Research for permits do not go that far back 16 years |
| | ago, however, bedroom #2 does have one window which does not meet today's building code |
| | requirement for egress. On the other side of the bedroom wall is the community laundry room |
| | for the building and there is a window which appears to be at the same height as the window in |
| | bedroom #2. As a note, Bedroom #1 also has windows and the heights of the bottom of the |
| | window sills to the floor appears to be lower than the window in bedroom #2. |
| | A call to the management office to gain the records for the apartment will be done |
| | and an enforcement action will be done if it can be proved bedroom #2 room was illegally built. |
| | |
| | |
| | |
| | |

4. **RECEIPTS FOR RENTAL PAYMENTS**: The landlord must provide you with a receipt for any money paid, except where the payment is made by personal check *and* is in full satisfaction of all amounts due. The receipt must state the purpose and the date of the payment, as well as the amount of any money that remains due. (14 DCMR § 306)

5. **RENT INCREASES**: "Rent control" limits the amount and the frequency of rent increases. For units that are exempt from rent control, generally only the lease terms limit rent increases. If rent control applies, the landlord may not raise the rent: (a) unless the owner and manager are properly licensed and registered; (b) unless the unit and common areas substantially comply with the housing code; (c) more frequently than once every 12 months; (d) by more than the Consumer Price Index (CPI) for an elderly tenant (age 62 or over) or tenant with a disability, regardless of income, if registered with the Rent Administrator; (e) by more than the CPI + 2% for all other tenants. A rent increase larger than (d) or (e) requires government approval of a landlord petition, which tenants may challenge. You also may challenge a rent increase implemented within the prior 3 years.

6. **BUILDING CONDITIONS**: The landlord must ensure that your unit and all common areas are safe and sanitary as of the first day of your tenancy. This is known as the *"warranty of habitability."* The landlord must maintain your apartment and all common areas of the building in compliance with the housing code, including keeping the premises safe and secure and free of rodents and pests, keeping the structure and facilities of the building in good repair, and ensuring adequate heat, lighting, and ventilation. The tenant has the right to receive a copy of a notice of violation issued to the landlord (14 DCMR §§ 106; 301; & 400-999)

7. **LEAD PAINT HAZARD**: For properties built prior to 1978, the landlord must (a) provide a prospective tenant household with a form issued by the District Department of the Environment about their rights under the D.C. lead laws; (b) provide a current lead-safe "clearance report" to (i) a prospective tenant household that includes a child less than 6 years of age or a pregnant woman, (ii) an in-place tenant household that gains such a person and requests the report in writing from the landlord, and (iii) any tenant household regularly visited by such a person; and (c) disclose to a tenant household what the landlord reasonably should know about the presence in the tenant's unit of a lead-based paint hazard or of lead-based paint, which is presumed to be present unless there is documentation showing otherwise. (20 DCMR §§ 3300 *et seq.*)

8. **MOLD:** Upon written notice from a tenant that mold or suspected mold exists in the unit or a common area, the landlord must inspect the premises within 7 days and remediate within 30 days. Mold assessment and remediation must be performed in compliance with District regulations. (D.C. Official Code § 8-241)

**EXHIBITS  15 AND 16**

**PHOTOS of windows in Bedrooms 1 and 2.**









Laundry
Room
Window

Bedroom #2
Window



BEDROOM NO. 1 - window





**EXHIBIT 17**

**DC TENANT BILL OF RIGHTS NO. 3 – DISCLOSURE OF INFORMATION  X X X X X X X X the  landlord must disclose: x x x x x x x x  certain housing code violation reports; x x x  "**



# DISTRICT OF COLUMBIA OFFICE OF THE TENANT ADVOCATE

## District of Columbia Tenant Bill of Rights

The Tenant Bill of Rights Amendment Act of 2014 , effective December 17, 2014 (D.C. Law 20-147; D.C. Official Code §§ 42-3531.07(8) & 42-3502.22(b)(1)) requires the D.C. Office of Tenant Advocate to publish a "D.C. Tenant Bill of Rights" to be updated periodically and noticed in the *D.C. Register*. This document is not exhaustive and is intended to provide tenants with an overview of the basic rights of tenancy in the District. Except for rent control, all these rights apply to every tenant in the District.

1. ***LEASE***:  A written lease is *not* required to establish a tenancy.  If there is one, the landlord must provide you with a copy of the lease and all addendums.  The landlord must also provide you with copies of certain District housing regulations, including those for Landlord & Tenant relations.  Certain lease clauses are prohibited, including waiver of landlord liability for failing to properly maintain the property. The landlord may not change the terms of your lease without your agreement.  After the initial lease term expires, you have the right to continue your tenancy month-to-month indefinitely on the same terms, except for lawful rent increases. (14 DCMR §§ 101, 106 & 300-399)

2. ***SECURITY DEPOSIT***:  The amount of the security deposit may not exceed the amount of 1 month's rent.  The landlord must place your security deposit in an interest-bearing account.  The landlord must post notices stating where the security deposit is held and the prevailing interest rate.  If there is a "move-out" inspection, the landlord must notify you of the date and time.  Within 45 days after you vacate the apartment, the landlord must either return your security deposit with interest, or provide you with written notice that the security deposit will be used to defray legitimate expenses (which must be itemized within 30 more days). (14 DCMR §§ 308-311)

3. ***DISCLOSURE OF INFORMATION***:  Upon receiving your application to lease an apartment, the landlord must disclose: (a) the applicable rent for the rental unit; (b) any pending petition that could affect the rent (if rent control applies); (c) any surcharges on the rent and the date they expire (if rent control applies); (d) the rent control or exempt status of the accommodation; (e) certain housing code violation reports; (f) the amount of any non-refundable application fee, security deposit, and interest rate; (g) any pending condo or coop conversion; (h) ownership and business license information; (i) either a 3-year history of "mold contamination" (as defined) in the unit and common areas, or proof of proper remediation; and (j) a copy of this D.C. Tenant Bill of Rights document. The landlord must make this information accessible to you throughout your tenancy.  Upon a tenant's request once per year, the landlord must also disclose the amount of, and the basis for, each rent increase for the prior 3 years. (D.C. Official Code §§ 42-3502.22 & .13(d))



**EXHIBIT 18**

**FAIR HOUSING LAW IN THE DISTRICT**

**DC TENANT BILL OF RIGHTS NO. 3 -- DISCLOSURE OF INFORMATION**

# Fair Housing Law in the District

*Know Your Rights in the District of Columbia*



## DC Human Rights Act

In accordance with the District of Columbia Human Rights Act of 1977, as amended, the District of Columbia and housing providers cannot discriminate on the basis of (actual or perceived):

- Race
- Color
- Sex (including pregnancy)
- National Origin
- Religion
- Age
- Marital Status

- Personal Appearance
- Sexual Orientation
- Gender Identity or Expression
- Familial Status
- Family Responsibilities
- Matriculation
- Political Affiliation

- Disability
- Source of Income
- Victim of an Intra-Family Offense
- Place of Residence or Business

*Sexual harassment is a form of sex discrimination which is prohibited by the Act. In addition, harassment based on any of the above categories is also prohibited by the Act.*

It is unlawful for any person to practice discrimination in the rental or sale of housing accommodations and commercial space in the District of Columbia on the basis of the above categories.

Similar prohibitions apply to "blockbusting," "steering," and financing.

## Examples of Illegal Discrimination

In the District, it is illegal to:

- Refuse housing to someone because of one of the traits;
- Make housing unavailable to any person because of their traits;
- Advertise a preference or dislike for a group because of their traits;
- Falsely tell someone housing is unavailable because of their traits;
- Establish different terms or conditions because of their traits;
- Provide different housing, units or services (such as repairs) because of particular traits;
- Urge someone to move to a specific area because of their traits;
- Persuade owners to sell because people of a particular traits are moving into the neighborhood;
- Refuse to make a loan because of a person's traits;
- Provide inaccurate or different information depending on the traits; or
- Retaliate against someone for filing a complaint or acting as a witness.

### Filing a Complaint of a Violation

To file a complaint about a violation of these laws with the Office of Human Rights, visit:

- **Online** at ohr.dc.gov; or
- **In-Person** at 441 4th Street NW, Suite 570N, Washington, DC 20001.

Questions can also be answered by phone at (202) 727-4559.



# DISTRICT OF COLUMBIA OFFICE OF THE TENANT ADVOCATE

## District of Columbia Tenant Bill of Rights

The Tenant Bill of Rights Amendment Act of 2014, effective December 17, 2014 (D.C. Law 20-147; D.C. Official Code §§ 42-3531.07(8) & 42-3502.22(b)(1)) requires the D.C. Office of Tenant Advocate to publish a "D.C. Tenant Bill of Rights" to be updated periodically and noticed in the *D.C. Register*. This document is not exhaustive and is intended to provide tenants with an overview of the basic rights of tenancy in the District. Except for rent control, all these rights apply to every tenant in the District.

1. *LEASE*: A written lease is *not* required to establish a tenancy. If there is one, the landlord must provide you with a copy of the lease and all addendums. The landlord must also provide you with copies of certain District housing regulations, including those for Landlord & Tenant relations. Certain lease clauses are prohibited, including waiver of landlord liability for failing to properly maintain the property. The landlord may not change the terms of your lease without your agreement. After the initial lease term expires, you have the right to continue your tenancy month-to-month indefinitely on the same terms, except for lawful rent increases. (14 DCMR §§ 101, 106 & 300-399)

2. *SECURITY DEPOSIT*: The amount of the security deposit may not exceed the amount of 1 month's rent. The landlord must place your security deposit in an interest-bearing account. The landlord must post notices stating where the security deposit is held and the prevailing interest rate. If there is a "move-out" inspection, the landlord must notify you of the date and time. Within 45 days after you vacate the apartment, the landlord must either return your security deposit with interest, or provide you with written notice that the security deposit will be used to defray legitimate expenses (which must be itemized within 30 more days). (14 DCMR §§ 308-311)

3. *DISCLOSURE OF INFORMATION*: Upon receiving your application to lease an apartment, the landlord must disclose: (a) the applicable rent for the rental unit; (b) any pending petition that could affect the rent (if rent control applies); (c) any surcharges on the rent and the date they expire (if rent control applies); (d) the rent control or exempt status of the accommodation; (e) certain housing code violation reports; (f) the amount of any non-refundable application fee, security deposit, and interest rate; (g) any pending condo or coop conversion; (h) ownership and business license information; (i) either a 3-year history of "mold contamination" (as defined) in the unit and common areas, or proof of proper remediation; and (j) a copy of this D.C. Tenant Bill of Rights document. The landlord must make this information accessible to you throughout your tenancy. Upon a tenant's request once per year, the landlord must also disclose the amount of, and the basis for, each rent increase for the prior 3 years. (D.C. Official Code §§ 42-3502.22 & .13(d))

EXHIBIT 19

DC TENANT BILL OF RIGHTS NO. 10 – DISCRIMINATION

THE FEDERAL HOUSING ACT

9. *QUIET ENJOYMENT AND RETALIATION*: The landlord may not unreasonably interfere with the tenant's comfort, safety or enjoyment of a rental unit, whether for the purpose of causing the housing accommodation to become vacant or otherwise (D.C. Official Code § 42-3402.10). The landlord may not retaliate against you for exercising any right of tenancy. Retaliation includes unlawfully seeking to recover possession of your unit, to increase the rent, to decrease services or increase your obligations; and also includes violating your privacy, harassing you, or refusing to honor your lease. (D.C. Official Code § 42-3505.02)

10. *DISCRIMINATION*: The landlord may not engage in discriminatory acts based upon the actual or perceived: race, color, religion, national origin, sex, age, marital status, genetic information, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities, disability, matriculation, political affiliation, source of income, status as a victim of an intra-family offense, or place of residence or business of any individual. Discriminatory acts include refusing to rent; renting on unfavorable terms, conditions, or privileges; creating a hostile living environment; and refusing to make reasonable accommodations to give a person an equal opportunity to use and enjoy the premises. (D.C. Official Code § 2-1401.01 *et seq*.)

11. *RIGHT TO ORGANIZE*: The landlord may not interfere with the right of tenants to organize a tenant association, convene meetings, distribute literature, post information, and provide building access to an outside tenant organizer. (D.C. Official Code § 42-3505.06)

12. *SALE AND CONVERSION*: Tenants must be given the opportunity to purchase an accommodation before the landlord sells or demolishes the accommodation or discontinues the housing use. The landlord may not convert the rental accommodation to a cooperative or condominium unless a majority of the tenants votes for the conversion in a tenant election certified by the District's Conversion and Sale Administrator. (D.C. Official Code §§ 42-3404.02 & 42-3402.02)

13. *RELOCATION ASSISTANCE*: If you are displaced by alterations or renovations, substantial rehabilitation, demolition, or the discontinuance of the housing use, you may have the right to receive relocation assistance from your landlord. (D.C. Official Code § 42-3507.01)

14. *EVICTION*: The landlord may evict you only for one of ten specific reasons set forth in Title V of the Rental Housing Act of 1985. For example, you may *not* be evicted just because your lease term expires, or because the rental property has been sold or foreclosed upon. Even if there is a valid basis to evict you, the landlord may not use "self-help" methods to do so, such as cutting off your utilities or changing the locks. Rather, the landlord must go through the judicial process. You generally must be given a written Notice to Vacate (an exception is non-payment of rent where you waive the right to notice in the lease); an opportunity to cure the lease violation, if that is the basis for the action; and an opportunity to challenge the landlord's claims in court. Finally, any eviction must be pursuant to a court order, and must be scheduled and supervised by the U.S. Marshal Service. (D.C. Official Code § 42-3505.01)



Download article as a PDF

Saving up enough money to pay the deposit and first month's rent for an apartment -- not to mention utilities and other necessities -- can be a monumental task. But when housing discrimination comes into play, such a basic human need as shelter can be nearly impossible to obtain. Below are answers to some of the most frequently asked questions about housing discrimination.

**What type of housing discrimination is illegal when it comes to property rentals?**

The federal Fair Housing Act, the Fair Housing Amendment Acts (42 U.S. Code 3601-3619, 3631), and many state and local laws prohibit a landlord from selecting tenants based on certain protected criteria. A landlord may not refuse to rent to a tenant for the following reasons:

- Race or color
- National origin
- Religion
- Disability or handicap, including physical and mental impairment
- Sex, including sexual harassment
- Familial status (includes protection for people with children under age 18 or pregnant women)

In addition, state and local housing discrimination laws may offer coverage beyond federal law, such as protection for sexual orientation, age, and marital status.

**What kind of housing discrimination do the federal Fair Housing Acts prohibit?**

A landlord must treat every tenant equally. Illegal discrimination occurs when the landlord:

- Refuses to rent to members of a certain race
- Denies the availability of a available rental dwelling or steers renters to a certain area based on race
- Creates unreasonable restrictions on the number of people that may live in the rental unit
- Includes preferences or limitations in a rental advertisement
- Creates different terms or standards for certain tenants
- Terminates a tenancy based on a discriminatory reason
- Provides services or facilities only for certain tenants
- Demands sexual favors or creates a sexually hostile environment
- Refuses to make reasonable accommodations for a disabled tenant
- Fails to stop another tenant from making discriminatory, harassing, or threatening comments to a person in a protected category

The Fair Housing Acts apply to any person that deals with tenants and prospective tenants, including real estate agents, property owners, landlords, and managers. Even if the property owner did not personally discriminate against tenants or prospective tenants, the landlord may still be liable for the civil rights violations of employees.



**EXHIBIT 20**

**DC TENANT BILL OF RIGHTS NO. 9 – QUIET ENJOYMENT AND RETALIATION**

9. *QUIET ENJOYMENT AND RETALIATION:*. The landlord may not unreasonably interfere with the tenant's comfort, safety or enjoyment of a rental unit, whether for the purpose of causing the housing accommodation to become vacant or otherwise (D.C. Official Code § 42-3402.10). The landlord may not retaliate against you for exercising any right of tenancy. Retaliation includes unlawfully seeking to recover possession of your unit, to increase the rent, to decrease services or increase your obligations; and also includes violating your privacy, harassing you, or refusing to honor your lease. (D.C. Official Code § 42-3505.02)

10. *DISCRIMINATION:* The landlord may not engage in discriminatory acts based upon the actual or perceived: race, color, religion, national origin, sex, age, marital status, genetic information, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities, disability, matriculation, political affiliation, source of income, status as a victim of an intra-family offense, or place of residence or business of any individual. Discriminatory acts include refusing to rent; renting on unfavorable terms, conditions, or privileges; creating a hostile living environment; and refusing to make reasonable accommodations to give a person an equal opportunity to use and enjoy the premises. (D.C. Official Code § 2-1401.01 *et seq* )

11. *RIGHT TO ORGANIZE:* The landlord may not interfere with the right of tenants to organize a tenant association, convene meetings, distribute literature, post information, and provide building access to an outside tenant organizer. (D.C. Official Code § 42-3505.06)

12. *SALE AND CONVERSION:* Tenants must be given the opportunity to purchase an accommodation before the landlord sells or demolishes the accommodation or discontinues the housing use. The landlord may not convert the rental accommodation to a cooperative or condominium unless a majority of the tenants votes for the conversion in a tenant election certified by the District's Conversion and Sale Administrator. (D.C. Official Code §§ 42-3404.02 & 42-3402.02)

13. *RELOCATION ASSISTANCE:* If you are displaced by alterations or renovations, substantial rehabilitation, demolition, or the discontinuance of the housing use, you may have the right to receive relocation assistance from your landlord (D.C. Official Code § 42-3507.01)

14. *EVICTION:* The landlord may evict you only for one of ten specific reasons set forth in Title V of the Rental Housing Act of 1985. For example, you may *not* be evicted just because your lease term expires, or because the rental property has been sold or foreclosed upon. Even if there is a valid basis to evict you, the landlord may not use "self-help" methods to do so, such as cutting off your utilities or changing the locks. Rather, the landlord must go through the judicial process. You generally must be given a written Notice to Vacate (an exception is non-payment of rent where you waive the right to notice in the lease); an opportunity to cure the lease violation, if that is the basis for the action; and an opportunity to challenge the landlord's claims in court. Finally, any eviction must be pursuant to a court order, and must be scheduled and supervised by the U.S. Marshal Service. (D.C. Official Code § 42-3505.01)

**EXHIBIT 21**

ALDON MANAGEMENT CORP. (AMC's)

ADDENDUM

Employee Housing Discount

Constante  Barot and Robert Weaver, Jr.



**ADDENDUM**
Employee Housing Discount

WHEREAS, Aldon Management Corp., is Agent for the Landlord, as well as Property Manager for the property referenced below and is also the Employer (hereinafter "Landlord/Employer") of **Constante Barot** (hereinafter "Employee/Tenant"); and

WHEREAS, the Landlord/Employer and Employee/Tenant have entered into a certain Lease titled "Aldon Management Corporation Apartment Lease Agreement" of even date (the "Lease"); covering the premises Employee/Tenant leases from Landlord/Employee, as Agent for Owner, located at **8707 14th Street, N.W., Washington, D.C. 20012** and known as Apartment #**A**; and

WHEREAS, this Addendum is to make certain additions and exceptions to the Lease consistent with the Landlord/Employer/Employee/Tenant relationship;

NOW THEREFORE, in consideration of the mutual promises contained in the Lease and in this Addendum, the parties agree as follows:

1. This Addendum to the Lease dated **August 12, 2008**, being executed by the Landlord/Employer and the Employee/Tenant. It is the policy of the Property Manager ("Landlord/Employer") that the Employee/Tenant live on the property as a condition of employment.

2. The Total Rent shall include the Monthly Rent and the Rental Abatement as stated in (1) following (combined), and for the unit referenced above, shall be **$229.00** per month. So long as the Employee/Tenant is employed by the Landlord/Employer: (1) the Total Rent shall be abated by 75% of the Monthly Rent for the period commencing June 1, 2012 until such abatement is adjusted, such adjustment being at the sole discretion of the Landlord/Employer, through May 31, 2012, and (2) THEREAFTER the Total Rent shall be escalated annually in accordance with Landlord/Employer's regular procedures. At such time as the employment relationship has terminated, the Employee/Tenant shall have ten (10) business days from delivery of notice of such termination from the Employer to elect either: (1) to terminate the Lease and surrender possession of the Unit by the end of the month following notice of such election, it being agreed and understood that in the event Employee/Tenant elects to terminate said lease the rent for the month in which the Employee/Tenant turns over possession to Landlord/Employer shall be prorated through the date of delivery of possession to Landlord/Employer; or (2) to pay any outstanding balance of any Security Deposit to equate to the then market Security Deposit and to continue the lease term and be responsible to pay the rent, all payments to be due and payable as of the first day of the month following notice of such election, provided, however, regardless of the remaining term of the Lease the Employee/Tenant may terminate the Lease on not less than sixty (60) days written notice at any time after the initial election to continue the Lease. Should the Employee/Tenant fail to deliver a notice of election within the ten (10) business days of receipt of said notice of termination, the Employee/Tenant shall be deemed to have elected to terminate the Lease, as provided in (1) in the prior sentence above. Notwithstanding anything herein to the contrary; (1) actions by the Employee/Tenant, or attributable under the Lease with the Employee/Tenant, which would result in an eviction of a tenant who is not an Employee/Tenant shall allow the Landlord/Employer to terminate this Lease; and (2) any suspension of an Employee/Tenant based upon actions which the Landlord/Employer reasonably determines is a danger to others, the property, or the Employee/Tenant, the Landlord/Employer may immediately terminate this Lease by written notice to the Employee/Tenant.

3. The rental rate shall be subject to change on an annual basis based upon increases given to other tenants of comparable units.

4. The Employee/Tenant may not sublet the premises, in part or in whole, until such time as the Employee/Tenant has elected to continue the lease term in accordance with paragraph 2 above and after such election in accordance with paragraph 23 of the Lease.

5. This Addendum is to provide certain exceptions and additions to the provisions of the Lease. The terms of the Lease and the Addendum are to be read together, provided, any conflict between the 

NOW THEREFORE, in consideration of the mutual promises contained in the Lease and in this Addendum, the parties agree as follows:

1. This Addendum to the Lease dated **August 12, 2008**, being executed by the Landlord/Employer and the Employee/Tenant. It is the policy of the Property Manager ("Landlord/Employer") that the Employee/Tenant live on the property as a condition of employment.

2. The Total Rent shall include the Monthly Rent and the Rental Abatement as stated in (1) following (combined), and for the unit referenced above, shall be **$229.00** per month. So long as the Employee/Tenant is employed by the Landlord/Employer: (1) the Total Rent shall be abated by 75% of the Monthly Rent for the period commencing June 1, 2012 until such abatement is adjusted, such adjustment being at the sole discretion of the Landlord/Employer, through May 31, 2012, and (2) THEREAFTER the Total Rent shall be escalated annually in accordance with Landlord/Employer's regular procedures. At such time as the employment relationship has terminated, the Employee/Tenant shall have ten (10) business days from delivery of notice of such termination from the Employer to elect either: (1) to terminate the Lease and surrender possession of the Unit by the end of the month following notice of such election, it being agreed and understood that in the event Employee/Tenant elects to terminate said lease the rent for the month in which the Employee/Tenant turns over possession to Landlord/Employer shall be prorated through the date of delivery of possession to Landlord/Employer; or (2) to pay any outstanding balance of any Security Deposit to equate to the then market Security Deposit and to continue the lease term and be responsible to pay the rent, all payments to be due and payable as of the first day of the month following notice of such election, provided, however, regardless of the remaining term of the Lease the Employee/Tenant may terminate the Lease on not less than sixty (60) days written notice at any time after the initial election to continue the Lease. Should the Employee/Tenant fail to deliver a notice of election within the ten (10) business days of receipt of said notice of termination, the Employee/Tenant shall be deemed to have elected to terminate the Lease, as provided in (1) in the prior sentence above. Notwithstanding anything herein to the contrary; (1) actions by the Employee/Tenant, or attributable under the Lease with the Employee/Tenant, which would result in an eviction of a tenant who is not an Employee/Tenant shall allow the Landlord/Employer to terminate this Lease; and (2) any suspension of an Employee/Tenant based upon actions which the Landlord/Employer reasonably determines is a danger to others, the property, or the Employee/Tenant, the Landlord/Employer may immediately terminate this Lease by written notice to the Employee/Tenant.

3. The rental rate shall be subject to change on an annual basis based upon increases given to other tenants of comparable units.

4. The Employee/Tenant may not sublet the premises, in part or in whole, until such time as the Employee/Tenant has elected to continue the lease term in accordance with paragraph 2 above and after such election in accordance with paragraph 23 of the Lease.

5. This Addendum is to provide certain exceptions and additions to the provisions of the Lease. The terms of the Lease and the Addendum are to be read together, provided, any conflict between the Lease and the Addendum shall be read to give full effect to the provisions of the Addendum.

Landlord/Employer
BY: Aldon Management Corp., Agent

_____  5/31/12
Signature                Date

Employee/Tenant

_____  5-29-12
Signature                Date

A.4

## ADDENDUM
### Employee Housing Discount

WHEREAS, Aldon Management Corp., is Agent for the Landlord, as well as Property Manager for the property referenced below and is also the Employer (hereinafter "Landlord/Employer") of <u>Robert Weaver</u> (hereinafter "Employee/Tenant"); and

WHEREAS, the Landlord/Employer and Employee/Tenant have entered into a certain Lease titled "Aldon Management Corporation Apartment Lease Agreement" of even date (the "Lease"); covering the premises Employee/Tenant leases from Landlord/Employee, as Agent for Owner, located at <u>6701 14th Street, N.W., Washington, D.C. 20012</u> and known as Apartment #<u>A</u>; and

WHEREAS, this Addendum is to make certain additions and exceptions to the Lease consistent with the Landlord/Employer/Employee/Tenant relationship;

NOW THEREFORE, in consideration of the mutual promises contained in the Lease and in this Addendum, the parties agree as follows:

1. This Addendum to the Lease dated <u>December 20, 2007</u>, being executed by the Landlord/Employer and the Employee/Tenant. It is the policy of the Property Manager ("Landlord/Employer") that the Employee/Tenant live on the property as a condition of employment.

2. The Total Rent shall include the Monthly Rent and the Rental Abatement as stated in (1) following (combined), and for the unit referenced above, shall be <u>$224.00</u> per month. So long as the Employee/Tenant is employed by the Landlord/Employer: (1) the Total Rent shall be abated by 75% of the Monthly Rent for the period commencing June 1, 2012 until such abatement is adjusted, such adjustment being at the sole discretion of the Landlord/Employer, through May 31, 2012, and (2) THEREAFTER the Total Rent shall be escalated annually in accordance with Landlord/Employer's regular procedures. At such time as the employment relationship has terminated, the Employee/Tenant shall have ten (10) business days from delivery of notice of such termination from the Employer to elect either: (1) to terminate the Lease and surrender possession of the Unit by the end of the month following notice of such election, it being agreed and understood that in the event Employee/Tenant elects to terminate said lease the rent for the month in which the Employee/Tenant turns over possession to Landlord/Employer shall be prorated through the date of delivery of possession to Landlord/Employer; or (2) to pay any outstanding balance of any Security Deposit to equate to the then market Security Deposit and to continue the lease term and be responsible to pay the rent, all payments to be due and payable as of the first day of the month following notice of such election, provided, however, regardless of the remaining term of the Lease the Employee/Tenant may terminate the Lease on not less than sixty (60) days written notice at any time after the initial election to continue the Lease. Should the Employee/Tenant fail to deliver a notice of election within the ten (10) business days of receipt of said notice of termination, the Employee/Tenant shall be deemed to have elected to terminate the Lease, as provided in (1) in the prior sentence above. Notwithstanding anything herein to the contrary; (1) actions by the Employee/Tenant, or attributable under the Lease with the Employee/Tenant, which would result in an eviction of a tenant who is not an Employee/Tenant shall allow the Landlord/Employer to terminate this Lease; and (2) any suspension of an Employee/Tenant based upon actions which the Landlord/Employer reasonably determines is a danger to others, the property, or the Employee/Tenant, the Landlord/Employer may immediately terminate this Lease by written notice to the Employee/Tenant.

3. The rental rate shall be subject to change on an annual basis based upon increases given to other tenants of comparable units.

4. The Employee/Tenant may not sublet the premises, in part or in whole, until such time as the Employee/Tenant has elected to continue the lease term in accordance with paragraph 2 above and after such election in accordance with paragraph 23 of the Lease.

5. This Addendum is to provide certain exceptions and additions to the provisions of the Lease. The

NOW THEREFORE, in consideration of the mutual promises contained in the Lease and in this Addendum, the parties agree as follows:

1. This Addendum to the Lease dated **December 20, 2007**, being executed by the Landlord/Employer and the Employee/Tenant. It is the policy of the Property Manager ("Landlord/Employer") that the Employee/Tenant live on the property as a condition of employment.

2. The Total Rent shall include the Monthly Rent and the Rental Abatement as stated in (1) following (combined), and for the unit referenced above, shall be **$224.00** per month. So long as the Employee/Tenant is employed by the Landlord/Employer: (1) the Total Rent shall be abated by 75% of the Monthly Rent for the period commencing June 1, 2012 until such abatement is adjusted, such adjustment being at the sole discretion of the Landlord/Employer, through May 31, 2012, and (2) THEREAFTER the Total Rent shall be escalated annually in accordance with Landlord/Employer's regular procedures. At such time as the employment relationship has terminated, the Employee/Tenant shall have ten (10) business days from delivery of notice of such termination from the Employer to elect either: (1) to terminate the Lease and surrender possession of the Unit by the end of the month following notice of such election, it being agreed and understood that in the event Employee/Tenant elects to terminate said lease the rent for the month in which the Employee/Tenant turns over possession to Landlord/Employer shall be prorated through the date of delivery of possession to Landlord/Employer; or (2) to pay any outstanding balance of any Security Deposit to equate to the then market Security Deposit and to continue the lease term and be responsible to pay the rent, all payments to be due and payable as of the first day of the month following notice of such election, provided, however, regardless of the remaining term of the Lease the Employee/Tenant may terminate the Lease on not less than sixty (60) days written notice at any time after the initial election to continue the Lease. Should the Employee/Tenant fail to deliver a notice of election within the ten (10) business days of receipt of said notice of termination, the Employee/Tenant shall be deemed to have elected to terminate the Lease, as provided in (1) in the prior sentence above. Notwithstanding anything herein to the contrary; (1) actions by the Employee/Tenant, or attributable under the Lease with the Employee/Tenant, which would result in an eviction of a tenant who is not an Employee/Tenant shall allow the Landlord/Employer to terminate this Lease; and (2) any suspension of an Employee/Tenant based upon actions which the Landlord/Employer reasonably determines is a danger to others, the property, or the Employee/Tenant, the Landlord/Employer may immediately terminate this Lease by written notice to the Employee/Tenant.

3. The rental rate shall be subject to change on an annual basis based upon increases given to other tenants of comparable units.

4. The Employee/Tenant may not sublet the premises, in part or in whole, until such time as the Employee/Tenant has elected to continue the lease term in accordance with paragraph 2 above and after such election in accordance with paragraph 23 of the Lease.

5. This Addendum is to provide certain exceptions and additions to the provisions of the Lease. The terms of the Lease and the Addendum are to be read together, provided, any conflict between the Lease and the Addendum shall be read to give full effect to the provisions of the Addendum.

Landlord/Employer
BY:  Aldon Management Corp., Agent

_Signature_                    5/31/12
Signature            /Date

Employee/Tenant

_Signature_                    5/29/12
Signature            /Date

#4

**EXHIBIT 22**

**EEOC FORM 5**

**CHARGE OF DISCRIMINATION**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 570-2017-01704 |

| D.C. Office Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| **Constante P. Barot** | (202) 723-0402 | 1950 |

| Street Address | City, State and ZIP Code |
|---|---|
| 6707 14th Street, N.W., Apt. A, Washington, DC 20012 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **ALDON MANAGEMENT CORP. (ASPEN)** | 15 - 100 | |

| Street Address   Aspen ← | City, State and ZIP Code |
|---|---|
| 1400 13th Street, N.W., Suite B, Washington, DC 20012 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☒ NATIONAL ORIGIN

☐ RETALIATION   ☒ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION

☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 05-01-2017 | 09-12-2017 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I have been employed by Respondent since 2003. In May 2017 I received a new lease as part of my employment contract. The new lease contained terms and conditions that I felt were illegal and unethical. My wife reported Respondent to D.C. Government for possible housing violations. Over the course of the last several months members of management have harassed me and my wife. I believe I have been subjected to harassment and discrimination due to my age, 66, my national origin, Filipino, and my disability, in violation of the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act of 1990, as amended, and in retaliation for engaging in protected activity, under the above statutes.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| X 9-13-2017   ʀ ⟵ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |



# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER**, a charge of employment discrimination must be filed within the time-limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. **Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known."** If a question is not applicable write "n/a." Please Print.

`510-2017-01704 N`

**1. Personal Information**

Last Name: **BAROT**    First Name: Constante    MI: P

Street or Mailing Address: 6707, 14th St., NW    Apt Or Unit #: A

City: Washington,DC    County: USA    State:    ZIP: 20012

Phone Numbers: Home: ( 202 ) 723 0402    Work: ( 202 ) 726 0174

Cell: ( 202 )286 6522    Email Address: dolores_barot@yahoo.com

Date of Birth [redacted]    Sex: Male ☒  Female ☐    Do You Have a Disability? ☐ Yes  ☒ No

**Please answer each of the next three questions.**    i. Are you Hispanic or Latino?  ☐ Yes  ☒ No

ii. What is your Race? Please choose all that apply.  ☐ American Indian or Alaska Native   ☒ Asian   ☐ White

☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)?  Filipino

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: Dolores A.Barot    Relationship: Spouse

Address: 6707, 14th St.,NW Apt. A    City: Washington,DC    State:    Zip Code: 20012

Home Phone: ( 202 ) 723 0402    Other Phone: ( 202 ) 390 4637

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☒ Employer   ☐ Union   ☐ Employment Agency   ☒ Other (Please Specify) Maria Rico, Vice President

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**

Organization Name: Aldon Management(Aspen)

Address: 1400, Aspen St. NW Suite B    County: USA

City: Washington, DC    State:    Zip:    20012    Phone: ( 202 ) 726 0174

Type of Business: Real Estate/Rental Provider  Job Location if different from Org. Address:

Human Resources Director or Owner Name: Sidney Brown - Owner    Phone: 301 656 5998

**Number of Employees in the Organization at All Locations:** Please Check (√) One

☐ Fewer Than 15   ☒ 15 - 100   ☐ 101 - 200   ☐ 201 - 500   ☐ More than 500

**3. Your Employment Data** (Complete as many items as you can)    Are you a Federal Employee? ☐Yes  ☒No

Date Hired: March 17, 2003    Job Title At Hire: Custodian

Pay Rate When Hired: $9.50/hr.    Last or Current Pay Rate:$15.35/hr

Job Title at Time of Alleged Discrimination: Maintenance Helper    Date Quit/Discharged: n.a.

Name and Title of Immediate Supervisor: Daria Simpson, Manager

2

'If Job Applicant, Date You Applied for Job _____     Job Title Applied For _____

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race    ☐ Sex   ☒ Age. ☐ Disability ☐ National Origin ☐ Religion   ☒ Retaliation ☐ Pregnancy ☐ Color (typically a difference in skin shade within the same race) ☐ Genetic Information; choose which type(s) of genetic information is involved:

☐ i. genetic testing  ☐ ii. family medical history  ☐ iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _____

If you checked genetic information, how did the employer obtain the genetic information? _____

_____

Other reason (basis) for discrimination (Explain). PLEASE SEE ATTACHED

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed.
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

A) Date: 4/28/17;5/03/17;5/10/17 Action: Aldon defrauded me, gave different type of apt. (w/ illegal bedroom) not informed prior
                                  to occupancy re this;keeps accusing us of unfounded Lease Violations (see attached)

Name and Title of Person(s) Responsible: Maria Rico, Vice President; Daria Simpson, Manager

B) Date: 5/03/17;5/0817          Action: Ms. Rico instructed Ms. Simpson to prepare new Lease Contract. The new lease contract
                                  that Aldon wants us to sign restricts number of occupants to only two.(SEE ATTACHED)

Name and Title of Person(s) Responsible: Maria Rico, Vice President; Daria Simpson, Manager

**6. Why do you believe these actions were discriminatory?** Please attach additional pages if needed.
Aldon's housing practice is NOT FAIR. My counterparts had real two Bedroom apt. units. My unit is one bedroom converted into two BR thru illegal acts (DIFFERENT TYPE). Management want us to sign new lease contract restricting the number of occupants from 4 adults and one child to only two adults to show that our apt. is one BR. Refused copy unless we sign it. The illegal bedroom is fire hazard (55 inches high). My rent is higher than my American counter who has real two bedroom apt. (SEE ATTACHED)

**7. What reason(s) were given to you for the acts you consider discriminatory?** By whom? His or Her Job Title?
6/20/17 - Ms. Rico,in their Bethesda Office said that she had talked to someone in Housing and Aldon has done nothing wrong (a LIE). Our unit has two bedrooms and the other bedroom is illegal). My housing benefit will be discontinued if my wife will continue with her complaints.
Maria Rico- Vice President

**8. Describe who was in the same or similar situation as you and how they were treated.** For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Robert Weaver | Black American, male, 52 | Maintenance Helper |

Description of Treatment  His apartment is a real two bedroom unit; his rent is lower than mine

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Jerell Herring, Jr. | Black American, male 30s | Maintenance Helper |

Description of Treatment  His apartment is a real two bedroom unit

2 , Q

'If Job Applicant, Date You Applied for Job _____ Job Title Applied For _____

**4.  What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race   ☐ Sex   ☒ Age   ☐ Disability   ☐ National Origin   ☐ Religion   ☒ Retaliation   ☐ Pregnancy   ☑ Color (typically a difference in skin shade within the same race)   ☐ Genetic Information; choose which type(s) of genetic information is involved:

☐ i. genetic testing   ☐ ii. family medical history   ☐ iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _____

If you checked genetic information, how did the employer obtain the genetic information? _____

_____

Other reason (basis) for discrimination (Explain). _____

**5.  What happened to you that you believe was discriminatory?**  Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) you believe discriminated against you.  **Please attach additional pages if needed.**
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

A)  Date: _____   Action: _____

Name and Title of Person(s) Responsible: _____

B)  Date: _____   Action: _____

Name and Title of Person(s) Responsible: _____

**6.  Why do you believe these actions were discriminatory?** Please attach additional pages if needed.

**7.  What reason(s) were given to you for the acts you consider discriminatory?**  By whom?  His or Her Job Title?

**8.  Describe who was in the same or similar situation as you and how they were treated.**  For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance?  Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination.  For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on.  Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| A.  Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Eugenio Bardaje | Filipino, male, 60s | Maintenance Helper |

Description of Treatment  Although he is a Filipino and approximately in the 60s ; his unit is a Real Two Bedroom apartment

| B.  Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

3

Of the persons in the same or similar situation as you, who was treated *worse* than you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| n.a. | | |

Description of Treatment  He is housed in Real and legal apartment unit.

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

Of the persons in the same or similar situation as you, who was treated the *same* as you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

Answer questions 9-12 only if you are claiming discrimination based on disability.  If not, skip to question 13.  Please tell us if you have more than one disability.  Please add additional pages if needed.

9.   Please check all that apply:

☐  Yes, I have a disability

☐  I do not have a disability now but I did have one

☐  No disability but the organization treats me as if I am disabled

10.  What is the disability that you believe is the reason for the adverse action taken against you?  Does this disability prevent or limit you from doing anything?  (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

11.  Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?

Yes ☐   No ☐

If "Yes," what medication, medical equipment or other assistance do you use?

12.  Did you ask your employer for any changes or assistance to do your job because of your disability?

Yes ☐   No ☐

If "YES", when did you ask? _____   How did you ask (verbally or in writing)? _____

Who did you ask?  (Provide full name and job title of person)

Describe the changes or assistance that you asked for:

How did your employer respond to your request?

4

13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

| A. Full Name | Job Title | Address & Phone Number *Aspen* |
|---|---|---|
| Rosea Smith | Asst. Manager | Aldon Management, 1400 St Nw Ste B, Washington, DC 20012 (202) 726 0174 |

What do you believe this person will tell us?
That as per Aldon's Record, our Apartment Unit is a one (1) Bedroom Apartment. Per instruction from the Manager, we can only have copy of the new lease contract unless we sign it.

| B. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| Ruben Legaspi | Compliance Specialist | DCRA ; 1100  4th St. NW, Washington, DC 20024  202 741 7736 |

What do you believe this person will tell us?
That our apartment unit is fire hazard because the window in the 2nd Bedroom is too high (55 inches tall). It was part of the Laundry Room and did not conform to building code requirement.

14. Have you filed a charge previously in this matter with EEOC or another agency?     Yes ☐     No ☒

15. If you have filed a complaint with another agency, provide name of agency and date of filing:
n.a.

16. Have you sought help about this situation from a union, an attorney, or any other source?   Yes ☒   No ☐
Provide name of organization, name of person you spoke with and date of contact. Results, if any?
Office of Human Rights (OHR),  Sandra E. Gallardo, June 27, 2017,  Results: Ms. Gallardo said that my case is not Housing Discrimination but Employment Discrimination and I can file a complaint if I so desire.

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

| Box 1 | ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time. |
|---|---|
| Box 2 | ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination. |

_____                         July 8, 2017
         **Signature**                                               **Today's Date**

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1. FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08).
2. AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a), 42 USC §2000ff-6.
3. PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4. ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters
5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

**EXHIBIT 23**

**EEOC DISMISSAL AND NOTICE OF SUIT RIGHTS**



EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To:   Constante P. Barot
      6707 14th Street, N.W.
      Apt. A
      Washington, DC 20012

From:   Washington Field Office
        131 M Street, N.E.
        Suite 4NW02F
        Washington, DC 20507

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |  |  |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | | Telephone No. |
|---|---|---|---|
| 570-2017-01704 | Alan W. Anderson, Deputy Director | | (202) 419-0756 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|  |  |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [X] | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other (briefly state) |

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

FOR _____

Mindy E. Weinstein,
Acting Director

SEP 1 3 2017

(Date Mailed)

Enclosures(s)

cc:

      ALDON MANAGEMENT CORP. (ASPEN)
      1400 Aspen Street, N.W.
      Suite B
      Washington, DC 20012



U.S. POSTAGE >> PITNEY BOWES

ZIP 20507 $ 000.46⁰
02 1W
0001387311 SEP 14 2017

EMPLOYMENT OPPORTUNITY COMMISSION
Washington Field Office
131 M Street, NE
Suite 4NW02F
Washington, DC 20507

OFFICIAL BUSINESS

2001232655 C019

EXHIBIT 24

US DEPARTMENT OF OUSING AND URBAN DEVELOPMENT Letter dated September 27, 2017 that reads:

"xxxxx your inquiry indicates that your housing is a condition of employment as stated in the Lease Agreement, Addendum Employee Housing section #1." X x x



U.S. Department of Housing and Urban Development

Philadelphia Office
The Wanamaker Building
100 Penn Square East
Philadelphia, Pennsylvania-19107-3380-

Constante P. Barot
6707 14th St. NW Apt-A
Washington, DC 20012

SEP 2 7 2017

Dear Constante P. Barot:

SUBJECT:    Housing Discrimination Complaint
            Inquiry number 538869

Your housing discrimination complaint was received on September 6, 2017 in the
Philadelphia Office of Fair Housing and Equal Opportunity (FHEO).

The U.S. Department of Housing and Urban Development (the Department)
administratively enforces the Fair Housing Act of 1968 (the Act) as amended (42 U.S.C. 3601 et
seq.). The Act prohibits discrimination in the sale, rental, advertising, financing, appraising or
insuring of residential dwellings based on race, color, religion, sex disability, familial status or
national origin.

Before commencing an investigation under the Fair Housing Act, the Department must
verify and establish jurisdiction to investigate the complainant's allegations. Jurisdiction
consists of the following required elements: (1) the complainant is a person who was injured by,
or about to be injured by a discriminatory housing practice (standing); (2) the respondent is
person who is liable under the Act; (3) the Act applies to a dwelling and/or housing-related
transaction described in the complaint; (4) the alleged discriminatory practice or conduct is
prohibited under sections 804,805,806, or 818 of the Act (subject matter); and (5) the complaint
was timely filed with the Department within one (1) year of the alleged violation (statute of
limitations). If one or more of these elements are absent, the Department lacks authority to
investigate the complaint under the Act. In your case, the issues described in your claim do not
constitute an illegal housing practice as defined by the Act.

This letter is to inform you that the information that you submitted to our office regarding
your complaint allegations is insufficient to proceed under the law. The alleged discriminatory
practice or conduct is not prohibited under the housing discrimination laws. Therefore, the
Philadelphia FHEO office cannot accept your complaint at this time.

Since our review of your inquiry indicates that your housing is a condition of
employment as stated in the Lease Agreement, Addendum Employee Housing, section #1, We
recommend that you contact:

The Equal Rights Center
Melvina Ford, Executive Director
11 Dupont Circle NW, Suite 450
Washington, DC 20036
Telephone No.: 202-370-3220

If you have any questions in this regard, please contact Nancy Rivera at 215-861-7634 or call our toll-free number at 1-888-799-2085. For hearing impaired persons, please call our TTY at 1-800-877-8339. Should you need assistance with a housing discrimination related matter in the future, please feel free to contact our office again.

Sincerely,

Roberto H. Chavez, Esq.
Chief, Intake Branch
Office of Fair Housing and Equal Opportunity